GFH FINANCIAL SERVICES CORPORATION, APPELLEE, V. DELORIS KIRK, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ARTHUR L. KIRK, DECEASED, APPELLANT.

437 N.W.2d 453

Filed March 24, 1989.    No. 87-260.

Deloris Kirk, pro se.

Roger G. Steele, of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and REAGAN, D.J.

REAGAN, D.J.

Plaintiff, GFH Financial Services Corporation (GFH), filed its petition with the Hall County District Court on February 15, 1985. The petition contained two causes of action, identical in form, seeking the return of personal property leased to the defendant and judgment for damages incurred as a result of breach of the lease agreements by the defendant. Both leases covered center pivot irrigation systems and miscellaneous items used in conjunction therewith. Plaintiff alleged there were due and remaining on the leases the sums of $42,017.19 and $35,064.41 as of February 12, 1985, together with interest and late charges, and prayed for judgment for that amount less what would be realized as proceeds in a sale of the equipment in a commercially reasonable manner.

Defendant answered on May 13, 1985, admitting generally the leases, the nonpayments, and the return of the leased property to the plaintiff. Defendant denied further liability, claiming the leases had been procured by fraud and misrepresentation. Specifically, defendant alleged that agents of the plaintiff knew the systems were to be installed on land under government lease, that defendant might be unable to renew these leases, and that plaintiff's agents represented if defendant did not renew these farm leases and was unable to make the lease payments for the pivot systems, plaintiff would take the systems back and defendant would have no further liability.

After a number of pretrial matters, the case was tried to a jury on essentially the foregoing issues on February 17 and 18, 1987. The jury returned a verdict in favor of the plaintiff and against the defendant for the total sum of $73,275.49.

Defendant has brought this appeal pro se, assigning the following as error: (1) the trial court's excluding testimony of defense witnesses as to representations made concerning the return of the leased property; (2) the trial court's excluding testimony of Deloris Kirk as to representations made to her and her husband at the time the leases were executed; (3) the trial court's excluding the defendant from pretrial conferences in chambers when issues of the case were discussed and decided; (4) plaintiff's failure to mitigate its damages; and (5) the trial court's permitting plaintiff to call witnesses not listed on the pretrial order, over defendant's objections.

Appellant, Deloris Kirk, and her late husband, Arthur L. Kirk, were farmers in the Grand Island area for some period of time prior to 1979. They had obtained a 5-year lease on two tracts of government land (designated as tracts 6 and 26 within the boundaries of the Cornhusker Army Ammunition Plant). Each tract contained more than a quarter section of land, but somewhat less than a half section, and was to be used for farming purposes.

In January of 1979, Arthur Kirk had attended a farm show which included some displays of farm irrigation equipment. He later began negotiations with Leon Hecht, who was general manager of Grand Island Irrigation and Construction Company, for the installation of a center pivot irrigation system on tract 6. The center pivot was manufactured by Gifford-Hill & Company, Inc., and other parts of the system were manufactured by various other entities. Hecht suggested various lease options of the irrigation system as means of financing its purchase and installation, and placed the Kirks in contact with representatives of plaintiff, GFH Financial Services Corporation, a wholly-owned subsidiary of Gifford-Hill.

A lease agreement for the irrigation system was reached on May 28, 1979, between the Kirks and GFH, and the system was installed by Grand Island Irrigation and Construction Company. The lease was received in evidence as exhibit 4. It shows the original cost of the system as $39,513, the term of the lease as 10 years 9 months, the annual payment as $5,795.77, and the total lease payments as $60,846.07. On termination of

the lease, the Kirks had the option to purchase the system at its then fair market value. On default, GFH had the right to take possession of the equipment and claim from the Kirks as damages the remaining rental payments, reduced to present worth (using a 6-percent per annum discount figure) less the fair market value of the equipment, and incidental damages. A similar lease was entered into on November 20, 1979, for an irrigation system on tract 26, although the term was 10 years 6 months, the annual payments were $6,944.89, and the total lease payments were $69,448.90. The original cost of the additional system as shown on exhibit 1, the second lease, was $45,856.

Unfortunately, the Kirks were not able to renew their government ground leases (these were evidently awarded every 5 years on a sealed-bid basis, and the Kirks were unsuccessful bidders in that process), and they defaulted on the irrigation system leases in 1984. This suit was commenced February 15, 1985. Following default, GFH recovered both irrigation systems and has made efforts to sell them. These efforts, except for sale of one of the diesel units powering the systems, have been unsuccessful.

Appellant's contentions that the leases were procured by fraud and misrepresentation were resolved adversely to her by the jury verdict, and absent prejudicial error, GFH is entitled to retain the benefit of that verdict. *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988); *Schmidt v. Schmidt*, 228 Neb. 758, 424 N.W.2d 339 (1988). Appellant assigns no error to the instructions outlining the issues of liability, and we note none which would vitiate the jury verdict in that regard.

Review of the errors assigned is made more difficult by the appellant's failure to make any reference to specific portions of the record which would support her position. It has long been the rule of this court that it is counsel's duty to specifically point out alleged errors, and, unless the briefs indicate at what page of the bill of exceptions these may be found, the court will not search for, nor consider them. *Stroman v. Atlas Refining Corporation*, 112 Neb. 187, 199 N.W. 26 (1924). It is the duty of counsel in briefing a case for this court to comply with the rules

and so assist the court in the ready transaction of business. *White v. Ardan, Inc.*, 230 Neb. 11, 430 N.W.2d 27 (1988). A litigant proceeding on a pro se basis is obligated to follow these same rules and procedures.

Notwithstanding that the assigned errors could be disposed of under the foregoing proposition, we have reviewed the record in this case and address them. With respect to appellant's first assignment of error, that the trial court erred in excluding testimony of defense witnesses, we learn from the brief that this is directed to the affidavits (attached to the brief) of Leon Hecht and Glen McKoski. This assignment fails for two reasons. Firstly, the bill of exceptions fails to show these affidavits were ever marked as exhibits, let alone offered and refused. *Anderson v. Autocrat Corp.*, 194 Neb. 278, 231 N.W.2d 560 (1975); *Blanco v. General Motors Acceptance Corp.*, 180 Neb. 365, 143 N.W.2d 257 (1966). Secondly, these witnesses personally appeared at trial and testified, and the bill of exceptions fails to show any objection as to their testimony which was improperly sustained.

Appellant's second, third, and fifth assignments of error may be treated together. It is incumbent on the party appealing to present a record which supports the errors assigned, and absent such a record, the decision of the lower court should be affirmed. *Chalupa v. Chalupa*, 220 Neb. 704, 371 N.W.2d 706 (1985). The bill of exceptions fails to disclose any testimony of Deloris Kirk that was excluded; it fails to disclose she was excluded from pretrial conferences; and it fails to disclose the plaintiff was permitted to call witnesses, over the defendant's objections, who were not listed on the pretrial order. Accordingly, these assignments of error are without merit.

Appellant's fourth assignment of error, that GFH failed to mitigate its damages, is also without merit. Both parties are in agreement that the law requires any party to a contract to take reasonable steps to reduce its damages in the event of a breach by another. Instruction No. 17 to the jury set forth this legal requirement. GFH produced evidence of the steps it had taken to resell the equipment, and we cannot say, as a matter of law, that it breached its legal duty to mitigate. However, GFH had a contractual duty, which should have been translated to an

evidentiary burden, to establish a "reasonable sales value" of the pivots at the time of termination and repossession in order to prove its damages.

The lack of an instruction on the plaintiff's burden to establish a "reasonable sales value," coupled with the instruction on damages that was actually given, the lease provisions, and the testimony on damages, demonstrates plain error which requires us to remand for further proceedings on the limited issue of damages. "Plain error" is error which was unasserted or uncomplained of at trial or on appeal, but is plainly evident from the record, which prejudicially affects a litigant's substantial right and which is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Keller v. Noble*, 229 Neb. 542, 428 N.W.2d 170 (1988). In the appellate process, the Supreme Court may, at its option, notice plain error not assigned. Neb. Ct. R. of Prac. 9D(1)d (rev. 1988); *In re Estate of Fischer*, 227 Neb. 722, 419 N.W.2d 860 (1988).

To show this error, it is necessary to look at a portion of instruction No. 18, certain paragraphs of the lease, and testimony elicited from the plaintiff's vice president and general manager, Richard Eastman. Instruction No. 18 provided in part as follows:

If you find for Plaintiff on the issue of liability, you must they [sic] fix the amount of money which will fairly and reasonably compensate Plaintiff for any of the following elements of damage proved by a preponderance of the evidence to have proximately resulted from the negligence [sic] of the Defendant:

1. Amount owing as a result of the termination of the May 28, 1979 lease.

2. Amount owing as a result of the termination of the November 20, 1979 lease.

3. The cost of repossession.

Paragraph 4, a portion of paragraph 23, and paragraph 24 of each lease provided as follows:

4. LATE PAYMENTS. The LESSOR may collect a "late charge" not to exceed 5% of the unpaid lease

payment or the highest amount allowed by law, whichever is less, for each lease payment more than ten days in arrears to cover the extra expenses involved in handling delinquency payments. In addition, the LESSEE shall pay unto the LESSOR interest on such delinquent payment from the date when due until paid at the highest lawful rate which may be charged the LESSEE.

. . . .

23. DEFAULT. . . . In the event this Lease is terminated . . . the Lessor at its option shall recover from the Lessee any and all amounts which under the terms of the Lease may be then due or which may have accrued to the date of such termination and also to recover from the Lessee in lieu of any further claim for loss of rent accruing from and after the date of such termination, a sum, with respect to the equipment, which represents . . . (b) the excess of the present worth, at the date of such termination, of all rents for the equipment which would have otherwise accrued hereunder from the date of such termination to the end of the term of this Lease over the sales value which the Lessor reasonably estimates to be obtainable for the equipment, such present worth to be computed on a basis of six percent (6%) per annum discount, compounded from the respective dates on which rent would have been payable hereunder had this Lease not been terminated.

. . . .

24. LESSOR'S EXPENSES. Lessee shall pay Lessor all costs and expenses, including reasonable attorneys fees, incurred by Lessor in exercising any of its rights or remedies or in enforcing any of the terms or conditions of this Lease.

Lastly, with respect to damages, Eastman testified as follows:

Q. Okay. Could you describe for the jury what paragraph 23 provides for when lease payments are not made?

A. Well, in conjunction with paragraph 4, if a customer does not make the lease payments that they agreed to make when they entered into the contract, he is obligated,

of course, to make the payments that he said he would make. If he doesn't make them timely he's obligated to make — he's obligated to pay a late charge on the payment. And in addition to that he's also obligated to pay interest for on the payment during the time — from the time that it is due until the time that it is ultimately paid. And that relates to all payments which are and become past due. In the — in paragraph 23 it indicates that if the customer doesn't make his payments ever that there is — that is a condition of default and in addition to the payments which have already become due the customer is liable for future payments that would have become due on the lease also. However, there is a discount given on those future payments because they are not yet due, but it is money that will ultimately become due and so the contract provides that there is a discount given because those payments are not yet due.

Q. Have you made any calculations pursuant to paragraph 23 of the leases to determine how much is owed by the Kirks on the May lease, which is Exhibit 1?

A. Yes. Using the — both the terms of paragraph 4, the late payment paragraph, and paragraph 23, the default paragraph, using the method that's described in each of those paragraphs, under the May lease as of today there would be a total amount owing of $37,217.16.

Q. That is as of today?

A. As of today.

Q. To date how much is due and owing GFH Financial Services from the Kirks on the November 20, 1979, lease, which is Exhibit 4?

A. Utilizing the same methodology for calculating the amount, the November lease has an amount due as of today of $44,902.62.

The witness further testified that the cost of removing the center pivots was $3,268.47 and the cost of storage was $1,655.42. The witness also testified the plaintiff had incurred attorney fees of $5,359.17 at time of trial, and further testified as follows:

Q. And do the leases, Exhibit 1 and Exhibit 4, say anywhere where GFH is entitled to recover attorney fees

and expenses?

A. Yes, paragraph 24 "Lessor's Expenses" also indicates that we should be entitled to recover for attorney fees as well.

Firstly, it would appear that paragraph 4 applies only to late payments under the lease, not future payments, even where discounted. Assuming, although the evidence is unclear, that both leases were terminated in May or June of 1984, the May lease would have one delinquent or late payment ($5,795.77) of 90 to 120 days' duration. The November lease would have, at the most, one delinquent or late payment ($6,944.89) of 30 days' duration. GFH would be entitled to 5 percent of each delinquent payment (a total of $637.03) plus interest on the payments at the "highest lawful rate" for 120 and 30 days, respectively. The highest lawful rate was 16 percent, Neb. Rev. Stat. § 45-101.03 (Reissue 1988), which would translate to a possible maximum interest recovery under this paragraph of $396.20. The total possible amount that would have accrued under this paragraph up to date of termination would then amount to the two lease payments, the late charges, and the interest, or a total of $13,773.89.

After making that determination, we look at the portion of paragraph 23 to determine the additional possible damages occasioned to plaintiff by defendant's breach of the leases. At the time of the assumed termination, there were five annual payments left on each lease. Each annual payment had to be discounted at 6 percent per annum to determine the present worth. Utilizing the present worth table from NJI 4.13, we can compute the value of the discounted lease payments as follows:

| Year | May Lease Payment | Discounted | Nov. Lease Payment | Discounted |
|---|---|---|---|---|
| 1985 | $ 5,795.77 | $ 5,467.71 | $ 6,944.89 | $ 6,551.78 |
| 1986 | 5,795.77 | 5,158.22 | 6,944.89 | 6,180.92 |
| 1987 | 5,795.77 | 4,866.24 | 6,944.89 | 5,831.06 |
| 1988 | 5,795.77 | 4,590.79 | 6,944.89 | 5,501.00 |
| 1989 | 5,795.77 | 4,330.94 | 6,944.89 | 5,189.62 |
| TOTALS | $28,978.85 | $24,413.90 | $34,724.45 | $29,254.38 |

From the total future rents, discounted to $53,668.28, plaintiff was entitled to recover the excess over the "reasonable sales value" of the equipment. The only evidence of reasonable sales value came from the testimony of plaintiff's vice president and general manager, Eastman. He testified as follows:

> Well, when we began advertising this equipment in 1984 we felt that if — that a fair value for the equipment was in the twenty to $21,000 range for each irrigation system. And that included not only the center pivot but the pumping unit and the — I'm sorry — the pumps and the power unit and the electrical generator that's attached to it.

We recognize the plaintiff's efforts to resell the equipment were unsuccessful and that there is other testimony in evidence as to the equipment's present market value, but, under the express terms of the lease, the equipment's "reasonable sales value" at the date of termination of the lease is the criterion to be used in ascertaining the lessor's damage. Accordingly, the appellant is entitled to be credited a minimum sum of $40,000 and a maximum sum of $42,000 against the discounted total of the future rent payments. GFH's maximum recovery, in addition to the amounts accrued under paragraph 4 at the date of termination, would then be the sum of $13,668.28. Its minimum recovery would be the sum of $11,668.28. GFH's total possible recovery, including the accrued amounts, would be $27,442.17 under both leases, as opposed to $82,119.78 as testified to by Eastman. We understand that his calculations, in all likelihood, included amounts for interest for the period of time beyond the termination of the leases. But the leases do not expressly provide for such interest, and prejudgment interest may not be recovered on an unliquidated claim. A claim is unliquidated and does not support such an award where a reasonable controversy exists either as to the right to recover or as to the amount of recovery. *Suess v. Lee Sapp Leasing*, 229 Neb. 755, 428 N.W.2d 899 (1988); *Langel Chevrolet-Cadillac v. Midwest Bridge*, 213 Neb. 283, 329 N.W.2d 97 (1983). GFH's right to recover anything beyond the equipment itself was in reasonable controversy, as was the amount of recovery, if any. Accordingly, GFH is not entitled to recover any prejudgment

interest.

Under paragraph 24 of the lease, in the event of termination, the lessor is also entitled to recover all costs and expenses. As we have previously noted, Eastman testified as to the cost of removing the center pivots, the cost of storage, and also the amount of attorney fees incurred by the lessor at the time of trial. It is clear that the cost of removing the center pivots is an element of damages that may properly be recovered. Inasmuch as paragraph 23 sets out a formula for determining the lessor's damages at the time of termination, the cost of storing these center pivots is not an element of damages properly recoverable under the lease. Furthermore, attorney fees are recoverable in Nebraska only where provided by statute or allowed by custom. *In re Estate of Reimer*, 229 Neb. 406, 427 N.W.2d 293 (1988); *McGuire v. McGuire*, 157 Neb. 226, 59 N.W.2d 336 (1953). Thus, a contractual provision that in the event of any dispute or litigation involving the contract, the prevailing party shall be entitled to recover all costs of suit, including reasonable attorney fees, is contrary to public policy and void. *Quinn v. Godfather's Investments*, 217 Neb. 441, 348 N.W.2d 893 (1984). Plaintiff's total possible recovery under this paragraph, then, amounted to $3,268.47.

Instruction No. 18 did not properly delineate for the jury's consideration the elements of damages under the lease, and at what point of time these damages were to be determined. The language of this instruction allowed the jury to consider a total damages figure before any credits were given for the "reasonable sales value" of the equipment, it allowed the jury to consider storage fees which were not recoverable under the lease, and it allowed the jury to consider the attorney fees expended by the plaintiff when such fees are not recoverable under the laws of the State of Nebraska. We recognize that all of this evidence came in without objection, and we are not suggesting that a trial judge must interpose objections to inadmissible evidence in every case. However, in this case the bill of exceptions discloses a pretrial conference where at least one of these matters—attorney fees—was discussed between counsel and the court, and it was apparent that this evidence was going to be offered on behalf of the plaintiff without

objection by the defense. Under these circumstances, a trial judge has a duty to point out the obvious error which will take place.

That these errors caused, or contributed to, a prejudicial conclusion is obvious when one considers the jury verdict of $73,275.49, as compared to the maximum possible damages as a matter of law of $30,710.64. Under the evidence, the minimum amount of damages sustained by plaintiff is $28,710.64. Thus, a remittitur of $44,564.85 is awarded.

The cause is remanded, and the plaintiff shall have 10 days after the filing of the mandate of this court in the district court in which to file an acceptance of the remittitur. The judgment shall draw interest from the date the remittitur is accepted. In the event the plaintiff fails to accept the remittitur, the defendant is granted a new trial as to the issue of damages only.

REMANDED FOR FURTHER PROCEEDINGS.