**Shakur ABDULLAH, Appellant,**

**v.**

**Frank GUNTER, Director of Corrections, Gary E. Grammer, Associate Director of Corrections, Harold W. Clarke, Warden of NSP, John P. Shaw, Associate Warden of NSP, and Mark W. Rosenau, Chaplain of NSP, Appellees.**

**No. 90–1085.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1991.

Decided Nov. 26, 1991.

---

David A. Barron, Lincoln, Neb., argued, for appellant.

Sharon Lindgren, Asst. Atty. Gen., Lincoln, Neb., argued, for appellees.

Before McMILLIAN, ARNOLD and LOKEN, Circuit Judges.

1. Defendants are Frank Gunter, Director of Corrections; Gary E. Grammer, Associate Director of Corrections; Harold W. Clarke, Warden of

McMILLIAN, Circuit Judge.

Shakur Abdullah ("plaintiff") appeals from a final judgment entered in the United States District Court for the District of Nebraska dismissing his civil rights action under 42 U.S.C. § 1983. Plaintiff alleges violations of his constitutional rights under the due process, equal protection and free exercise clauses. For reversal, plaintiff argues the district court erred in (1) denying plaintiff's request for appointed counsel, (2) granting summary judgment in favor of defendants [1] on plaintiff's due process and equal protection claims, and (3) denying plaintiff's motion for new trial after a jury trial on his free exercise claim. In support of his motion for new trial, plaintiff argues that defendants were improperly represented by the Nebraska Office of the Attorney General, that the jury instructions were improper and that a new trial was warranted based upon newly discovered evidence. Plaintiff also argues that the evidence was insufficient to support the jury verdict for defendants. For the reasons discussed below, the district court's order is affirmed in part and reversed in part.

## Background

On June 6, 1988, plaintiff, an inmate at the Nebraska State Penitentiary ("NSP"), requested that $2.00 be withdrawn from his account in the Inmate Trust Fund and sent to the Masjid Muhammad of Lincoln, Nebraska. The request was denied under the direction of defendant Rosenau, the prison chaplain. Plaintiff filed subsequent grievances seeking to reverse the denial. Defendants, all of whom are officers or employees at NSP, consistently denied his request.

Plaintiff, a Muslim, maintains that his $2.00 contribution was to fulfill his holy obligation of Zakah. The practice of Zakah, a form of charity or tithing, is one of the five basic pillars of the Islamic faith. From 1978 until 1986, plaintiff observed the practice of Zakah by periodically con-

NSP; John P. Shaw, Associate Warden of NSP; and Mark W. Rosenau, Chaplain of NSP.

tributing funds from his inmate trust account.

The Inmate Trust Fund allows NSP to account for inmate money and to maintain control over inmate deposits and disbursements. Guidelines for accounting and handling money in the Inmate Trust Fund were set forth in an Operational Memorandum No. 113.002.112 ("OM"). The OM had occasionally been amended by the NSP administration and, as of October 1985, it permitted inmates to withdraw funds "to assist with family support, make purchases at the Canteen and from approved vendors, or deposit funds in interest bearing accounts in approved financial institutions"; the term "family" was specifically defined as "parent, brother, sister, daughter, son, or spouse." The OM further stated that, "[a]ny exception to this stated list must have the approval of the Warden." Pursuant to the "exception" provision giving the Warden discretionary approval power, inmates were permitted to make religious and charitable contributions from their trust fund accounts.

In an earlier state court action brought by an NSP inmate challenging the constitutionality of the OM, the Nebraska Supreme Court affirmed a lower state court decision striking the "exception" provision as unconstitutionally vague and enjoining enforcement of only that portion of the OM. *Meis v. Grammer*, 226 Neb. 360, 411 N.W.2d 355 (1987).

At the time of plaintiff's June 1988 request, NSP officials adhered to a policy of denying all requests for disbursements from inmate accounts to religious organizations.[2] Meanwhile, however, prison officials continued to permit inmates to send checks for family support, for purchases at the Canteen or from approved vendors, or to deposit funds in interest-bearing accounts in approved financial institutions.

Plaintiff[3] filed a § 1983 action against defendants alleging violations of his rights under the due process, equal protection and free exercise clauses of the Constitution, and requesting court-appointed counsel. Upon review of the pro se complaint, a United States magistrate judge recommended dismissal of the due process and equal protection claims, denial of plaintiff's request for appointed counsel, and further proceedings on the First Amendment free exercise claim. *Abdullah v. Gunter*, No. CV88–L–577 (D.Neb. Oct. 20, 1988) (Magistrate Judge's Report, Recommendation, and Order). Upon review of objections to the magistrate judge's report and recommendation, the district court denied plaintiff's request for appointment of counsel and gave plaintiff an opportunity to amend his equal protection claim. *Id.* (Nov. 15, 1988) (Order on Objection to Magistrate's Report, Recommendation, and Order).

The parties subsequently filed cross-motions for summary judgment. Plaintiff additionally filed a motion for a temporary restraining order and a preliminary injunction. By memorandum and order dated June 26, 1989, the district court denied plaintiff's motions for summary judgment and for preliminary injunctive relief; the court granted defendants' motion for summary judgment as to the due process and equal protection claims, but denied defendants' motion as to the First Amendment claim. *Id.* (June 26, 1989) (Memorandum on Objection to the Magistrate's Report and Recommendation and on the Parties' Motions for Summary Judgment; Order).

Trial on plaintiff's First Amendment claim began on November 28, 1989. Plaintiff proceeded pro se. The jury returned a

---

**2.** In September 1987, the Department of Correctional Services ("DCS") attempted to overcome the vagueness of the "exception" language of the OM by issuing an administrative regulation permitting, among other things, disbursements from inmate accounts to "recognized religious organizations." Neb.Admin.R. & Regs. ("AR") 204.1 (rev. Sept.1987). Defendant Clarke, who had become the NSP Warden in 1987, nonetheless continued to disallow disbursements to

any religious organizations. In December 1988, DCS unilaterally revoked the reference to "recognized religious organizations." AR 204.1 (rev. Dec.1988).

**3.** This action was originally brought by plaintiff and co-plaintiff Raqib Abdul Aziz. Aziz, however, dropped out in the early stages of the litigation and is not a party to this appeal.

verdict in favor of defendants on November 30, 1989. The district court entered final judgment for defendants on December 5, 1989. This appeal followed.

### Discussion

*Appointment of Counsel*

Plaintiff first argues that the district court erred by denying his request for appointment of counsel. We hold that the district court should have appointed plaintiff counsel on the First Amendment claim, once the district court found it to be meritorious.

■ In *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003 (8th Cir.1984) (*Nelson*), Chief Judge Lay set forth the standard by which the district courts are to determine the need for appointed counsel for indigent civil litigants:

> [T]he appointment of counsel should be given serious consideration by the district court if the plaintiff has not alleged a frivolous or malicious claim. If a frivolous claim has been alleged, the district court may dismiss the claim. However, once the court is satisfied that plaintiff has alleged a valid prima facie claim, then further inquiry should be made as to need. The court should satisfy itself that plaintiff has in good faith attempted to retain counsel and has been unsuccessful. The court should also determine whether the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel.

*Id.* at 1005. On review, we will set aside the district court's decision to deny appointed counsel upon a finding of abuse of discretion. *Id.* at 1004.

Plaintiff's First Amendment claim was neither frivolous nor malicious. Under the standard set forth in *Nelson*, the district court was therefore obligated to make a determination of plaintiff's need for court-appointed counsel and the benefit to plaintiff and the court from the assistance of counsel. *Id.* at 1005.

■ In determining whether an indigent litigant is in need of appointed counsel, a number of factors are relevant including: the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues. *Johnson v. Williams*, 788 F.2d 1319, 1322–1323 (8th Cir.1986).

■ The district court determined that plaintiff did not need appointed counsel because "the factual and legal problems do not appear to be sufficiently complicated to require appointment of counsel." *Abdullah v. Gunter*, No. CV88–L–577 (Nov. 15, 1988) (Order on Objection to Magistrate's Report, Recommendation and Order). We disagree with the district court's determination that plaintiff's First Amendment challenge to NSP's policy of restricting religious contributions does not raise factually and legally complex issues. We believe other factors call for appointment of counsel as well.

Plaintiff had the burden of proving at trial that the NSP policy prohibiting inmates from making religious donations was not reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987) (*Turner*). The following issues were relevant to plaintiff's claim: (1) whether the policy possesses a valid connection with the legitimate, neutral governmental interest used to justify it; (2) whether plaintiff has other avenues for exercising his right to exercise his religion, including the practice of Zakah; (3) the impact on the inmate population, prison staff and prison resources of accommodating the right; and (4) the availability of feasible, ready alternatives. *Id.* at 89–91, 107 S.Ct. at 2261–63; *see also Iron Eyes v. Henry*, 907 F.2d 810, 813 (8th Cir.1990) (*Iron Eyes*); *Blankenship v. Gunter*, 898 F.2d 625, 627 (8th Cir.1990).

The district court denied defendants' summary judgment motion on the First Amendment claim specifically because the court found genuine issues of material fact as to "whether alternative means of exercising the [First Amendment] right remain open to the inmates; and whether there is

an absence of ready alternatives." *Abdullah v. Gunter*, No. CV88–L–577, slip op. at 5 (June 26, 1989) (Memorandum on Objection to the Magistrate's Report and Recommendation and on the Parties' Motions for Summary Judgment) (citing *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262).[4] These issues, along with the others specified in *Turner*, were presented to the jury as part of the jury's overall determination of the reasonableness of the NSP policy at issue. We believe the case which plaintiff was required to make to the jury, under the law of *Turner* and its progeny, was both legally and factually complex.

Moreover, plaintiff, an indigent prisoner, lacked sufficient resources to investigate the relevant facts. Plaintiff and the court would have benefited greatly from having appointed counsel investigate, for example, the extent to which the prison policy actually controlled the flow of inmate funds and illegal activities, the impact of permitting Zakah on the prison system, and the existence or absence of ready alternatives to the regulation.

Finally, plaintiff's ability to present his claim in a fair manner is certainly questionable where the determination of key facts and the ultimate application of law to fact is left entirely to the jury.[5] Unlike a bench trial or a motion hearing, where the court can be relied upon to take extra precautions to avoid undue prejudice to the pro se litigant, a jury trial does not afford such protection. To the contrary, the absence of counsel will more likely have a prejudicial impact on the minds of jurors, to the disadvantage of the pro se litigant.

Upon careful consideration of all circumstances in this case, we hold that the district court abused its discretion in denying plaintiff appointed counsel at trial on the First Amendment free exercise claim. As discussed below, we agree with the district court's analysis of plaintiff's due process and equal protection claims. Because we hold these claims to have been without merit and in fact frivolous, we hold that the district court did not abuse its discretion by denying plaintiff appointed counsel on those claims.

### Summary Judgment

Plaintiff additionally argues the district court erred in granting summary judgment in favor of defendants on plaintiff's due process and equal protection claims. We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

---

**4.** The district court based its finding of genuine issues of material fact upon statements in plaintiff's affidavits that (1) inmates are restricted by NSP from using funds in outside financial institutions for purposes other than those approved for disbursements from the Inmate Trust Fund, and (2) outside financial institutions approved for inmate accounts charge a $2.00 fee for withdrawals, and may take anywhere from one to three weeks to process a withdrawal. The district court also concluded that NSP's policy of allowing disbursements to family members did not provide an alternative means for inmates to make religious contributions because of restrictions placed on those disbursements. *Abdullah v. Gunter*, No. CV88–L–577, slip op. at 4–5 (June 26, 1989) (Memorandum on Objection to Magistrate's Report and Recommendation and on the Parties' Motions for Summary Judgment). By contrast, in *Blankenship v. Gunter*, 898 F.2d 625,

628 (8th Cir.1990), affirming a summary judgment in favor of NSP officials who had followed the same policy prohibiting religious donations, the plaintiff had failed to dispute evidence that alternative means of making religious contributions were available to NSP inmates.

**5.** The verdict form submitted to the jury presented two questions: the first on the ultimate question of the constitutionality of the NSP policy, and the second on damages, if any.

The constitutional issue, in its entirety, was set forth as follows:

　1. On the issue of whether there was a violation of the plaintiff's constitutional right we, the jury, find:

　a. for the plaintiff, Shakur Abdullah.

　b. for the defendants.

　(Circle "a" or "b")

Equal Protection

 To state an equal protection claim, plaintiff must show at a minimum that the state has failed to treat similarly situated persons alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The district court held that no equal protection violation occurred in view of undisputed evidence that all inmates under the auspices of the Department of Correctional Services were denied permission to make religious or charitable contributions from their inmate trust accounts. *Abdullah v. Gunter*, No. CV88–L–577, slip op. at 2 (June 26, 1989) (Memorandum on Objection to Magistrate's Report and Recommendation and on the Parties' Motions for Summary Judgment).[6] We agree with the district court's determination that defendants are entitled as a matter of law to judgment on plaintiff's equal protection claim.

Due Process

Plaintiff suggests two grounds on which the district court erred in granting summary judgment on his due process claim. First, citing *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), plaintiff argues that notice and a hearing are required before a constitutional right is infringed, and that his First Amendment right to free exercise of religion was infringed in violation of his right to procedural due process.

While it is true that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country," it has long been recognized that "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974).

Whether the First Amendment affords plaintiff the right to use funds in his inmate account to make direct religious or charitable donations remains at the heart of plaintiff's First Amendment free exercise claim, subject to the reasonableness test set forth in *Turner*. *See, e.g., Iron Eyes*, 907 F.2d at 812–813.

The more appropriate inquiry under a due process analysis is whether the State of Nebraska has created a liberty or property interest in prisoners' use of their inmate account funds for broader purposes than has been permitted by NSP officials by placing substantive limitations on official discretion in administering inmate accounts. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (*Hewitt*). This is the subject of plaintiff's second due process argument.

Plaintiff argues that, at the time his June 1988 request was denied, the State of Nebraska had created a constitutionally protected property interest in the use of his inmate account for religious donations.[7] To support this proposition, plaintiff cites *Hewitt*, in which the Supreme Court found that "the repeated use of explicitly mandatory language [in Pennsylvania prison statutes and regulations] in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871.

In the present case, plaintiff relies upon Neb.Rev.Stat. § 83–183(3) (1987), and AR 204.1 (rev. Sept.1987) for the proposition that the State of Nebraska had created a protected property interest on behalf of prisoners in their use of inmate account funds for religious donations at the time of his June 1988 request. Those provisions state in pertinent part:

**6.** At trial, the parties stipulated, solely for the purposes of this case, that "[t]he prison policy regarding charitable contributions was applied equally to all inmates."

**7.** We believe the "interest" which plaintiff argues is constitutionally protected would more appropriately be characterized as a liberty interest rather than a property interest, but for purposes of this disposition the distinction is not relevant.

[W]age payments to a person committed to the department shall be set aside by the chief executive officer of the facility in a separate fund. The fund shall enable the offender to contribute to the support of his dependents, if any, to make necessary purchases from the commissary, and to set aside sums to be paid to him at the time of his release from the facility.

Neb.Rev.Stat. § 83–183(3) (1987).

The Chief Executive Officer shall formulate regulations for the withdrawal of funds by an inmate. Inmates shall be permitted to make withdrawals for the purpose of sending funds to members of the inmate's family (parents, grandparents, siblings, spouse, child or grandchild) to courts and members of the bar, to *recognized religious organizations* to institutional Canteens or hobby offices for purchase of canteen goods, hobby goods and mail-order merchandise.

AR 204.1 (rev. Sept.1987) (emphasis added).[8]

We agree with the district court's analysis of Neb.Rev.Stat. § 83–183 finding, among other things, that the statute does not create a right of inmates to use non-wage monies in the Inmate Trust Fund for religious donations, without restriction. *See Abdullah v. Gunter*, No. CV88–L–577, slip op. at 6 (June 26, 1989) (Memorandum on Objection to the Magistrate's Report and Recommendation and on the Parties' Motions for Summary Judgment).[9] The statute simply does not mention religious contributions by inmates and therefore cannot be said to create a constitutionally protected interest in such activity. We also agree with the district court's analysis of

AR 204.1 (rev. Sept.1987), in which the district court found the language referring to "recognized religious organizations" to be vague, and thus unenforceable. *See id.* at 6–7. Since there are no genuine issues of material fact, and we hold that plaintiff has no constitutionally protected liberty or property interest in the use of his Inmate Trust Fund account for religious donations, we agree with the district court that defendants are entitled to judgment as a matter of law on plaintiff's due process claim.

## Conclusion

For the foregoing reasons, we reverse the district court's order dismissing plaintiff's First Amendment claim and remand for a new trial on that issue with instructions to the district court to appoint counsel for those proceedings. We therefore need not reach plaintiff's arguments regarding the sufficiency of the evidence, newly discovered evidence or the jury instructions. We affirm the district court's grant of summary judgment on plaintiff's equal protection and due process claims. We hold plaintiff's remaining arguments on appeal to be without merit and affirm the district court in all other respects.

**8.** The substance of AR 204.1 (rev. Sept.1987) was summarily revoked in December 1988, by AR 204.1 (rev. Dec.1988).

**9.** The district court concluded:

I find nothing in Neb.Rev.Stat. § 83–183 that secures or gives definition to the benefit the plaintiffs claim—a right to use nonwage monies from their inmate trust funds in a manner inconsistent with OM 113.2.112. Even if I read the statute to require an exclusive fund for wage payments, which I do not, that separation requirement still would have no bearing on whether plaintiffs were entitled

to use their nonwage monies held in the inmate trust fund free from restriction. Moreover, I am persuaded by the defendants' argument that the inmates impliedly consent to restrictions being placed on the uses of nonwage money sent to them at the penitentiary since OM 113.2.112 informs the inmates of the restrictions.

*Abdullah v. Gunter*, No. CV88–L–577, slip op. at 6 (June 26, 1989) (Memorandum on Objection to the Magistrate's Report and Recommendation and on the Parties' Motions for Summary Judgment).