SHAKUR ABDULLAH, APPELLANT, V. FRANK O. GUNTER, APPELLEE.
497 N.W.2d 12

Filed March 12, 1993.   No. S-91-004.

Shakur Abdullah, pro se.

Don Stenberg, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

Plaintiff, an inmate of the Nebraska State Penitentiary, sued the Director of the Department of Correctional Services (DCS) over the confiscation of inmates non wage money and the Department's promulgation of rules governing the treatment of inmate money. The district court granted summary judgment in favor of defendant and he appeals from that order. We affirm.

## FACTS

Neb. Rev. Stat. § 83-183(3) (Reissue 1987) states:

> Except as provided in section 83-183.01, wage payments to a person committed to the department shall be set aside by the chief executive officer of the facility in a separate fund. The fund shall enable the offender to contribute to

the support of his dependents, if any, to make necessary purchases from the commissary, and to set aside sums to be paid to him at the time of his release from the facility.

When an inmate is assigned to a state facility maintained by the DCS an institutional account is established for him. On March 1, 1989, the DCS adopted a new accounting procedure whereby an inmate could place money received from outside sources in his institutional account only if he agreed to restrict his use of non-wage monies to those uses consistent with state law. Those uses included making payments for support of inmate's dependents, making necessary purchases from the commissary, saving funds for release, and paying part or all of the cost of housing the inmate. If the inmate chose not to sign the waiver, the funds received were placed in a confiscated fund, where it would remain until the inmate's release. Interest gained on the confiscated fund was used for the general welfare of the DCS residents. Inmates were also allowed to maintain personal accounts in private banks. Plaintiff alleged he received two $10 money orders, one on March 9 and the other on May 5. According to his institutional account, the amount confiscated was $10. Because the plaintiff did not sign the waiver, the non wage money he received from outside sources was placed in a confiscated fund. On August 9, 1989, the plaintiff filed a petition pro se against the defendant, the director of the DCS, in the District Court challenging the waiver requirement. He alleged the procedure went beyond the defendant's authority because § 83-183(3) affected only wages earned by the plaintiff, and therefore non wage money received by plaintiff could not be restricted. The plaintiff also claimed that the procedure was invalid because it was not promulgated in accordance with the Administrative Procedure Act Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1987). Furthermore, the plaintiff claimed the defendant violated his constitutional rights by implementing this procedure, and that § 83-183(3) was unconstitutionally overbroad. On September 2, 1989, a new rule promulgated pursuant to the Administrative Procedures Act came into effect. The new rule discontinued the waiver policy and instead required all funds, regardless of source, be posted to an inmates institutional account, and limited the use of such monies to

statutory purposes. On October 11, 1989, inmates were notified of the new policy by the posting of a notice and by delivery of the notice to all inmates.

## STANDARD OF REVIEW

Motions for summary judgment were filed by both parties and the District Court found that there were no genuine issues of material fact and that defendants were entitled to judgment as a matter of law. In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992); *Scott v. Mattingly*, 241 Neb. 276, 488 N.W.2d 349 (1992).

We have stated that generalized and vague assertions do not advise the Supreme Court of the issue submitted for decision and in such circumstances the decision appealed from will be affirmed unless the Supreme Court elects to note plain error. *In re Interest of Rasmussen*, 236 Neb. 572, 462 N.W.2d 621 (1990). See, also, *Meis v. Grammer*, 226 Neb. 360, 411 N.W.2d 355 (1987). "Plain error" is error which was unasserted or uncomplained of at trial or on appeal, but is plainly evident from the record, which prejudicially affects a litigant's substantial right and which is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *GFH Financial Services Corp. v. Kirk*, 231 Neb. 557, 437 N.W.2d 453 (1989). Litigants proceeding pro se are obligated to follow the same appellate rules and procedures applicable to counsel. *Id.*

## DISPOSITION

The plaintiff contends in his sole assignment of error that the trial court erred in granting the defendant's summary judgment "because genuine issues of material fact remained unresolved or in dispute between all parties." No indication is given in regards to what issues the plaintiff intends to raise in his argument. Plaintiff concludes his argument by stating that both his petition and the defendant's answer are in dispute "on both

matters of law and facts." It does not appear from the record that there were issues of material fact that were in dispute. Although the plaintiff and defendant disagree on the amount of money confiscated by the defendant, that determination is not necessary for the resolution of the case and is therefore immaterial. Since no plain error is evident from the record, the trial court's determination that defendant was entitled to judgment as a matter of law should be affirmed.

Plaintiff, in his argument, sets out various issues he alleges were not resolved in the trial court. He alleges that the trial court did not resolve the issues of whether: (1) § 83-183(3) authorizes the DCS to restrict the use of non wage monies; (2) § 83-183(3) is constitutional; (3) the adoption of the waiver policy was subject to the provisions of the Administrative Procedure Act Neb. Rev. Stat. § 84-901 et seq. (Reissue 1987); (4) DCS' adoption of the waiver policy violated the Division of Powers provision of the Nebraska Constitution.

## DCS' RESTRICTION OF NON WAGE MONEY

Regarding the DCS's authority to restrict non wage funds received by the inmate, § 83-183(3) grants authority to the DCS to restrict wages earned by inmates, but the DCS also acquires authority to maintain and administer Nebraska's correctional facilities, including the Nebraska State penitentiary in which the plaintiff is housed, through Neb. Rev. Stat. § 83-171 (Reissue 1987). Therefore, unless § 83-183 has created a liberty or property interest in the manner in which non wage funds are spent, the DCS has the authority to restrict such expenditures.

Liberty interests protected by the 14th Amendment may arise from two sources: Due Process and laws of the state. *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 865, 74 L. Ed. 2d 646 (1983). In order to create a liberty interest, state regulations must use explicit mandatory language "in connection with the establishment of 'specific substantive predicates' to limit official discretion." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S. Ct. 1904, 1910, 104 L. Ed. 2d 506, 517 (1989) (quoting *Hewitt v. Helms, supra*). In *Thompson*, a Kentucky prison regulation listed types of prison visitors who could be excluded. The state reformatory then

issued its own regulations which included the language of the statute and set forth additional instances in which a visitor could be refused admittance. After the reformatory refused to admit several visitors, the inmates brought an action claiming their Due Process rights were violated because the state had created a liberty interest in receiving visitors who were not excludable under the list. The Court held that the state prison regulation listing the types of visitors who could be excluded from visitation did not give inmates a liberty interest in receiving visitors protectable under the Due Process Clause because the language used by the state was not mandatory. *Id.* at 464-65, 109 S. Ct. at 1910-11, 104 L. Ed. 2d at 517-18.

The U.S Court of Appeals for the Eighth Circuit recently held in *Abdullah v. Gunter*, 949 F.2d 1032 (1991), *cert. den.* _____ U.S. _____, 112 S. Ct. 1995, 118 L. Ed. 2d 591 (1992), that plaintiff's due process was not violated by a prison regulation restricting distribution of funds only to recognized religions. The plaintiff inmate, relying on § 83-183(3) and prison regulations established pursuant to § 83-183(3), argued that the state had created a constitutionally protected property interest in the use of his inmate account for religious donations. The court noted that the statute did not mention religious contributions by inmates and held the statute did not create a right of inmates to use non wage monies in inmate trust funds for religious donations, without restrictions. We find that the same principles apply to the question of whether the DCS has authority to restrict non wage monies. The question is whether by prescribing the manner in which inmates may spend wage earnings in § 83-183, the legislature created a property right to spend non wage monies without restrictions. We find similarly to *Abdullah v. Gunter, supra,* that no protected interest was created in spending non wage earnings. The language in § 83-183(3) mandates that wage payments made to an inmate be set aside for specific purposes. However, the statute does not address other sources of funds. Accordingly, summary judgment was proper because defendant was entitled to judgment as a matter of law.

## CONSTITUTIONALITY OF § 83-183(3)
## AND DIVISION OF POWERS

Plaintiff also asserts that § 83-183(3) is unconstitutional, and that the defendants, as members of the executive branch, infringed on the legislative powers by passing a policy that affected plaintiff's substantive rights. We note that Neb. Ct. R. of Prac. 9E (rev. 1992) requires a plaintiff challenging the constitutionality of a statute to file and serve a separate written notice with the Supreme Court clerk at the time he files his brief. There is no record of such notice in the transcript filed. Plaintiff asserts in his brief that these issues were not resolved and therefore genuine issues of fact remain. Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *State v. Union Pacific RR. Co., supra*; *Scott v. Mattingly, supra*. The trial court determined that as a matter of law, defendant was entitled to judgment. Plaintiff has provided no legal argument in his brief which sets forth authority supporting a contrary holding. In addition, a statute is presumed constitutional, and one claiming that a statute is unconstitutional has the burden to show that the statute is unconstitutional. *State v. Nebraska Association of Public Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991). Plaintiff's assertions of unconstitutionality are insufficient to overcome the burden of unconstitutionality. No legal argument is set forth by the plaintiff to support this assertion. As this court restricts its review to matters which are assigned and argued in the brief, and as there is no plain error evident in the record, this court will not address the matter. Neb. Ct. R. of Prac. 9D(1)d (rev. 1992); *Schlup v. Auburn Needleworks, Inc.*, 239 Neb. 854, 479 N.W.2d 440 (1992).

## WAIVER POLICY AND
## ADMINISTRATIVE PROCEDURES ACT

Plaintiff also asserted the waiver policy was invalid because it was not promulgated pursuant to the Administrative

Procedure Act, Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1987). § 84-911 authorizes a court to invalidate a rule or regulation if it finds that it was adopted without compliance with the statutory rule-making or regulation-making procedures. The question of whether the waiver policy should be invalidated because it was not promulgated pursuant to the Administrative Procedure Act is a moot question. The waiver policy was discontinued, and the new policy was promulgated consistent with the Administrative Procedures Act. Therefore, we do not address the matter as we do not sit to give opinions on moot questions on abstract propositions. *Braesch v. DePasquale*, 200 Neb. 726, 265 N.W.2d 842, *cert. denied* 439 U.S. 1068, 99 S. Ct. 836, 59 L. Ed. 2d 34 (1978).

## CONCLUSION
The judgment of the lower court is affirmed.

AFFIRMED.