_____

No. 95-2549
_____

Moorish Science Temple of          *
America, Inc.; Frank Applewhite;    *
Curtis Owen,                        *
                                    *
          Appellants,               *    Appeal from the United States
                                    *    District Court for the
     v.                             *    District of Minnesota.
                                    *         [UNPUBLISHED]
Dennis Benson, Warden; Steve        *
Hokonson, Chaplain,                 *
                                    *
          Appellees.                *

_____

          Submitted:  May 20, 1996

            Filed:  May 29, 1996
_____

Before McMILLIAN, WOLLMAN, and MURPHY, Circuit Judges.
_____

PER CURIAM.

     Plaintiffs, a branch temple of the Moorish Science Temple of America,
Inc. (MSTA), an inmate religious group at the Minnesota Correctional
Facility at Stillwater (MCF), and two inmate members of the group
(collectively, the Moors), appeal the district court's grant of summary
judgment to defendants, MCF Warden Dennis Benson and MCF Chaplain Steve
Hokonson, in the Moors' 42 U.S.C. § 1983 action.  We affirm in part and
reverse and remand in part.

     The Moors' claims relate to defendants' name-change policy, and to
defendants' closure of their group account.  We discuss these claims
separately.

## I.  Name-change policy

The Moors claimed defendants violated their rights under the First Amendment and Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4, by refusing to allow inmates to append the suffix El or Bey to their names unless an inmate legally changes his name pursuant to Minnesota statutory procedure.  The Moors alleged that their religion dictates the use of the suffixes and forbids them from going to court to change their names accordingly.  They sought injunctive relief, requesting only that they not be punished for signing their name with the El or Bey suffix in conjunction with their prison number without first obtaining a legal name change.  Along with an affidavit detailing their religious tenets regarding the use of the El or Bey suffix, the Moors submitted documentation from the national MSTA, which stated:

> A member is not to go into court to have a name change, because you are not changing your name. You are proclaiming something you always have been by being born a Moorish American.  One is not to change any existing records, but do all new business in the name of El or Bey, and put your nationality down or make it known, when and where it is called for.

Defendants moved for summary judgment and submitted evidence showing that MCF recognizes all court-approved name changes and that an inmate's failure to use his correct legal name constitutes misrepresentation, a violation of MCF disciplinary rules.  The associate warden in charge of operations attested that requiring inmates to use only their legal names furthered institutional operating and security interests such as conducting inmate counts; taking attendance at work areas, group meetings, the law library, and for medical services; ensuring accurate inmate identification cards; preventing compatibility problems between inmates; and

monitoring the mail system.  The associate warden also attested that having to change institutional records to recognize an inmate's new name whenever the inmate demanded it would burden defendants.

The district court granted summary judgment to defendants, concluding that the Moors had not shown that the prohibition on obtaining a legal name change was a requirement of their faith.  The court concluded that the name change policy did not substantially burden the Moors and that even if it did, the policy was the least restrictive means for fulfilling a compelling governmental interest.

We review a grant of summary judgment de novo, applying the same standard as the district court.  Earnest v. Courtney, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam).  We conclude that summary judgment was improper.  The Moors produced unrebutted evidence that their religion forbids them from going to court to obtain a legal name change before using the El or Bey suffix.  See In re Young, No. 93-2267, slip op. at 20-21 (8th Cir. May 6, 1996) (threshold inquiry of RFRA claim is whether governmental action substantially burdens religious practice; definition of substantial burden); Brown-El v. Harris, 26 F.3d 68, 69-70 (8th Cir. 1994) (policy restricts free exercise if it coerces inmate into violating religious belief); see also Salaam v. Lockhart, 905 F.2d 1168, 1170 (8th Cir. 1990) (noting importance of personal name), cert. denied, 498 U.S. 1026 (1991); cf. Azeez v. Fairman, 795 F.2d 1296, 1297, 1300 (7th Cir. 1986) (no evidence that use of "committed" name until statutory name change completed violated inmates' religious beliefs).

Further, defendants' evidence failed to show how accommodating the Moors' request would implicate the security and administrative concerns defendants identified.  See 42 U.S.C. § 2000bb-1(b); Turner v. Safley, 482 U.S. 78, 89-91 (1987); O'Lone v. Estate of

-3-

<u>Shabazz</u>, 482 U.S. 342, 349 (1987).  Although we give deference to prison officials' judgments regarding security concerns, <u>see, e.g.</u>, <u>Goff v. Nix</u>, 803 F.2d 358, 361-63 (8th Cir. 1986), <u>cert. denied</u>, 484 U.S. 835 (1987), the associate warden's attestations do not explain how allowing inmates to append suffixes to their committed names--when signing them in conjunction with their prison numbers--would create identification problems.  We note that the Moors did not request that defendants employ the suffixes or change prison records, so defendants' evidence regarding administrative burden is inapposite.  <u>Cf.</u> <u>Salaam</u>, 905 F.2d at 1169-70, 1173-75 (defendant misconstrued scope of inmate request, which did not include request prison cease using inmate's committed name; prison required to add changed name to clothing, prison records, and mailroom list); <u>Barrett v. Commonwealth of Virginia</u>, 689 F.2d 498, 503 (4th Cir. 1982) (prison authorities not required to change and reorganize records, but could not condition receipt of benefits and services on inmates not using changed names); <u>Akbar v. Canney</u>, 634 F.2d 339, 340 (6th Cir. 1980) (per curiam) (prison officials not required to change all records to reflect changed name, and no evidence of denial of any prison benefit because of use of changed name), <u>cert. denied</u>, 450 U.S. 1002 (1981).

Thus, summary judgment on this claim was improper as to defendant Benson.  Summary judgment was proper as to defendant Hokonson, however, as the Moors have offered no evidence connecting him to the name-change policy.  <u>See</u> <u>Martin v. Sargent</u>, 780 F.2d 1334, 1338 (8th Cir. 1985); <u>see also</u> <u>Dicken v. Ashcroft</u>, 972 F.2d 231, 233 (8th Cir. 1992) (court of appeals may affirm district court on any basis supported by the record).

## II.  Group Account

The Moors claimed that defendants wrongfully closed the MSTA group account and transferred the money in the MSTA group account to the prison chaplain's fund, violating their First Amendment,

-4-

RFRA, and due process rights. The Moors also claimed, with a supporting affidavit, that their equal protection rights were violated because a Native American group was allowed a group account, which it used to pay for a "sweat lodge, Pipe & Drums ceremony" used for religious purposes. They sought the reinstatement of their group account and the return of the money. Subsequently, the Moors moved for an order compelling discovery, indicating that they sought information on why the Native American group was allowed to use a group account to pay for its religious needs.

Defendants moved for summary judgment, noting that all inmate religious group accounts were closed and arguing that the Moors were not similarly situated to the non-religious, cultural Native American group, which was allowed to maintain a group account.

The district court granted summary judgment to defendants. As to the Moors' equal protection claim, the court concluded that closing the Moors' group account did not violate their rights because all religious group accounts were closed and the Moors had offered nothing to support their contention that they were similarly situated to the Native American group. The court also denied the Moors' discovery motion.

The district court correctly concluded that defendants' closure of the Moors' account did not violate their First Amendment, RFRA, or due process rights. Summary judgment was improper, however, on the Moors' equal protection claim. The Moors offered undisputed evidence that the Native American group uses its account for religious purposes. Defendants' representation that the Native American group is "cultural" rather than "religious" does not resolve the question whether the two groups are similarly situated with respect to the maintenance and use of group accounts for religious purposes. Cf. Abdullah v. Gunter, 949 F.2d 1032, 1037 (8th Cir. 1991) (summary judgment on equal protection claim

appropriate where undisputed that all inmates denied permission to make religious contributions from their inmate accounts), <u>cert. denied</u>, 504 U.S. 930 (1992).  Accordingly, the district court should not have denied the Moors' motion to compel discovery.  <u>See</u> <u>Kinkead v. Southwestern Bell Tel. Co.</u>, 49 F.3d 454, 457 (8th Cir. 1995) (standard of review).

### III.  Conclusion

With respect to the Moors' claims regarding the name-change policy, we affirm as to Hokonson and reverse and remand as to Benson.  We affirm with respect to the Moors' First Amendment, RFRA, and due process claims regarding the closure of their group account.  As to the Moors' equal protection claim regarding the closure of their group account, we reverse and remand.  We also recommend the district court consider the standing of each of the three named plaintiffs with respect to each of the remaining claims.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.