HAZEL SCOTT, APPELLANT, V. DARLENE MATTINGLY ET AL., APPELLEES.

488 N.W.2d 349

Filed August 21, 1992.   No. S-89-848.

Robert Wm. Chapin, Jr., for appellant.

Robert F. Bartle, Special Assistant Attorney General, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

Hazel Scott, the plaintiff-appellant, brought this civil rights action based on 42 U.S.C. §§ 1983 to 1988 (1988) and Neb. Rev. Stat. §§ 28-926 (Reissue 1989) and 20-148 (Reissue 1991) against the defendants-appellees, the State of Nebraska, the State of Nebraska Department of Health, the State of Nebraska Bureau of Examining Boards, and various individuals, both individually and in their official capacities, employed by those entities. Scott claims denial of due process and equal protection. Appellees moved for summary judgment based on res judicata, collateral estoppel, waiver, failure to state a claim for which relief may be granted, statute of limitations, laches, and no dispute of material facts.

The district court sustained the motion and entered summary judgment, finding it was "swayed by the cumulative arguments put forth by the defendants." The plaintiff has appealed and contends that the district court erred in "sustaining the Motion for Summary Judgment as there are material facts in question which require that this matter be tried before the court and a jury" and in denying her a jury trial and the right to seek punitive damages. We affirm.

Appellant was born in Calcutta, India, but she received her nurse's training in England and the United States. Appellant obtained a registered-nursing license from New York in 1973, which license she still holds. Appellant worked briefly at several institutions in New York, and she worked for a short time in a federal hospital on a Native American reservation in South Dakota before coming to Nebraska.

The appellant's dispute with the Nebraska nursing authorities has an 18-year history. She first applied for a Nebraska registered-nursing license by reciprocity in 1974 (the first application). She reapplied in 1978, 1980, and 1983 (the

second, third, and fourth applications).

A hearing on the first application was held by the Nebraska Board of Nursing in 1975, after which the board denied the appellant a license. She appealed from that order to the district court, which reversed the order of the Board of Nursing. The State then appealed to this court, which affirmed the board's earlier ruling, finding that there was sufficient evidence of appellant's unprofessional conduct to justify denial of the license. *Scott v. State ex rel. Board of Nursing*, 196 Neb. 681, 244 N.W.2d 683 (1976). The unprofessional conduct, which was detailed in our 1976 opinion, consisted largely of insubordination and inattentiveness to patient welfare " ' "of a nature likely to jeopardize the interest of the public." ' " *Scott*, 196 Neb. at 690, 244 N.W.2d at 689.

The appellant applied for a license for the second time in 1978. The license was again denied, and Scott appealed to the district court for Lancaster County, which upheld the denial. Scott did not appeal that decision further.

In 1980, when appellant applied for her license for the third time, the Director of Health found that the appellant's second application had been denied because she had failed to show any substantial change in her conduct to prove that she was qualified to practice nursing. In regard to the third application, the director again found no substantial changes in appellant's practices to prove that she was qualified to practice.

Although the Director of Health denied appellant's third application for a license, he offered her an alternative to outright denial of an unconditional license (the 1981 order). That order stated:

1. That Hazel E. Scott be issued a temporary permit to practice professional nursing in the State of Nebraska concurrent with her enrollment in a refresher course acceptable both to her and to the Department of Health and Board of Nursing. The refresher course must, as a minimum, have both a theoretical component of at least eighty hours and a clinical component of at least sixty hours. Should the applicant withdraw from the course prior to successful completion the temporary permit will terminate at once. The temporary permit will be issued

upon submission of written proof to the Department of Health that the applicant has been accepted into an approved refresher course.

2. That, upon successful completion of the refresher course, Hazel E. Scott will be given a probationary registered professional nurse license contingent upon the following provisions:

a. That she practice nursing only under the direct supervision of a Registered Nurse. Direct supervision means that her nursing practice must be directly supervised by a Registered Nurse who is present in the unit at all times when Miss Scott is on duty.

b. That Hazel E. Scott and her employer report to the Department of Health and Board of Nursing in writing every three months for a period of one year, regarding all aspects of her nursing practice; and thereafter every six months for two years of nursing practice. The reports must reflect safe and satisfactory nursing practice.

c. Failure to comply fully with the preceding provisions on the part of the applicant, or a verified report of unsafe or unsatisfactory nursing practice by her, will result in reconsideration and reappraisal of her eligibility and aptitude to practice as a Registered Nurse subject to conditions.

In 1983, when the appellant applied for a license for the fourth time, the Director of Health looked to whether the appellant had complied with the terms of the 1981 order. A hearing on the fourth application before the director was held in December 1983. Both parties were represented by counsel, extensive testimony was taken, numerous exhibits were received, and formal rules of evidence were applied. After the hearing, the attorneys for both parties submitted briefs.

At the hearing, the appellant admitted that she had not complied with the conditions of the 1981 order. During the 2-day hearing, her attorney did not concentrate on whether or not she had met the conditions of the order, but rather on the alleged constitutional violations present in the 1981 order. The appellant's brief before the director on the fourth application not only dealt with alleged constitutional violations dating back

to 1974, but alleged more violations, and dealt with them in far more detail than the briefs before us in the current action.

The director determined that the appellant's license had been properly denied and refused to grant her an unconditional license, but again offered her a conditional license for 1 year, after which an unconditional license would be issued if Scott met all the conditions. She did not appeal from the administrative hearing held on her fourth application.

The findings of the Director of Health after the administrative hearing included a finding that the department had acted on Scott's application in a timely manner; that she was properly notified of the hearing; that the hearing was conducted under formal rules of evidence; that the Director of Health properly presided over the hearing; that the findings of the Board regarding Scott's 1974 application were supported by the facts and were not unreasonable nor arbitrary; that Scott had not complied with any of the terms or conditions described above in the denial of her 1980 application, in that she had not completed continuing education courses that would prepare her to return to the work force and practice safely, she had not entered a refresher course, and she had never requested a permit for supervised nursing; that the conditions placed on Scott requiring supervised nursing were "operative" because it was determined that Scott had unsafe and unsatisfactory nursing practices; that Scott engaged in unprofessional conduct because of unsafe and unsatisfactory nursing practices prior to 1975; that Scott had not shown any substantial change in her unsafe and unsatisfactory nursing conduct since 1975; that Scott had not shown that she met the qualifications required of those licensed without examination; and that the director could impose such limitations upon a license as are necessary and proper.

The appellant now seeks to relitigate these issues in the civil rights action she brought in the district court for Lancaster County, claiming violations of equal protection and due process under 42 U.S.C. §§ 1983 to 1988 and Neb. Rev. Stat. §§ 28-926 and 20-148. She maintains that she was treated differently from other applicants because she is from India and is licensed in New York.

Neb. Rev. Stat. § 25-1332 (Reissue 1989) states that summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> In considering a motion for summary judgment, the evidence is to be viewed most favorably to the party against whom the motion is directed, giving to that party the benefit of all the reasonable inferences which may reasonably be drawn from the evidence. The party moving for summary judgment is entitled to summary judgment if the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact, that the ultimate inferences to be drawn from those facts are clear, and that the moving party is entitled to judgment as a matter of law.

*Hines v. Pollock*, 229 Neb. 614, 615-16, 428 N.W.2d 207, 208 (1988).

Summary judgment is appropriate in this case because the issues before us have already been litigated at least once, and this action is precluded. Any issues which were not litigated and resolved before us or before the district court were litigated and resolved before the Department of Health. An unreviewed administrative hearing can preclude later litigation of the same issues. The U.S. Supreme Court recently discussed the standard for determining when such issues would be precluded in *Astoria Federal Sav. and Loan Ass'n v. Solimino*, ____ U.S. ____, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991). The Court stated:

> We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 [86 S. Ct. 1545, 16 L. Ed.

2d 642] (1966). Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 [99 S. Ct. 645, 58 L. Ed. 2d 552] (1979). The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, see *University of Tennessee v. Elliott*, 478 U.S. 788, 798 [106 S. Ct. 3220, 92 L. Ed. 2d 635] (1986), which acts in a judicial capacity.

Courts do not, of course, have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, the question is not whether administrative estoppel is wise but whether it is intended by the legislature. The presumption holds nonetheless, for Congress is understood to legislate against a background of common-law adjudicatory principles. . . . Thus, where a common-law principle is well established, as are the rules of preclusion . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except "when a statutory purpose to the contrary is evident."

*Solimino*, 111 S. Ct. at 2169-70. In *Solimino*, the lower court had found that the Age Discrimination in Employment Act (ADEA) contained language showing a legislative intent that the principles of preclusion do not apply to cases brought under the ADEA.

The U.S. Supreme Court reached a different result, however, when considering § 1983 legislation. It determined that the federal courts will give preclusive effect in § 1983 actions to unreviewed administrative hearings, if the state in which the court is sitting would give preclusive effect to those hearings. *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S. Ct.

3220, 92 L. Ed. 2d 635 (1986). In *Elliott*, the university informed a black employee that he would be discharged for inadequate work performance and misconduct. The employee filed an administrative appeal under state law and also brought suit in the federal district court under Title VII of the Civil Rights Act and § 1983. A university official, acting as an administrative law judge, determined that the charges were not racially motivated and that some of them had been proven. The employee did not seek review of the administrative decision in the state courts. The district court granted summary judgment on both causes of action.

The U.S. Supreme Court held that the employee was entitled to a de novo trial on his Title VII claim because that statute contained language showing that the legislature intended that preclusion should not apply to Title VII actions. The Court also determined, however, that the employee's § 1983 claim was precluded because language, similar to that in Title VII, showing the legislature's intent to deviate from the traditional principles of preclusion was not present. The Court stated, "We also see no reason to suppose that Congress, in enacting the Reconstruction civil rights statutes, wished to foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication in the 20th century." *Elliott*, 478 U.S. at 797. After discussing the values protected by preclusion, including repose, the avoidance of extra costs and duplicative litigation, the preservation of judicial resources, and the preservation of federalism, the Court held that

> when a state agency "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Elliott*, 478 U.S. at 799.

Professor Davis agrees. "When an agency conducts a trial-type hearing, makes findings, and applies the law, the reasons for treating its decision as res judicata are the same as the reasons for applying res judicata to a decision of a court that

has used the same procedure." Kenneth C. Davis, Administrative Law Treatise, *Res Judicata of Informal Administrative Hearings* § 21.3 at 51 (2d ed. 1983).

This court previously discussed the preclusive effect of unreviewed administrative decisions in *Ohmart v. Dennis*, 188 Neb. 260, 196 N.W.2d 181 (1972). One of the issues in dispute in *Ohmart* was the validity of a certain mineral lease. The validity of the lease had been determined previously in intermediate administrative proceedings within the Department of the Interior, from which no appeal had been taken. We stated:

> The preclusive effect of an administrative decision depends upon many factors. It is important that the fact-finding process of the administrative body approximate that of a court, that the body observe fair standards of evidence, that the facts be adjudicative, and that the process not deprive a party of his right to a jury trial. Those criteria are not exclusive, but they assist us in outlining the applicability of preclusion. . . . The administrative decision against Dennis and Banner precluded them from challenging the validity of the lease in this proceeding.

*Ohmart*, 188 Neb. at 263-64, 196 N.W.2d at 184.

In *Christensen v. Boss*, 179 Neb. 429, 138 N.W.2d 716 (1965), the dissolution of a corporation was in dispute. The Secretary of State had dissolved the corporation, but the plaintiff contended that the dissolution was not proper. We held that this was an improper collateral attack on the administrative decision and stated, "The order or determination of an administrative body acting with jurisdiction and under authority of law is not subject to collateral attack in the absence of fraud or bad faith." *Id*. at 438, 138 N.W.2d at 721.

In *Richardson v. Board of Education*, 206 Neb. 18, 290 N.W.2d 803 (1980), the Nebraska State Board of Education ordered the school district to pay to the plaintiff a certain percentage of the tuition that the plaintiff had previously paid. The school district did not appeal from that decision, but when the plaintiff sued in district court for the money, the school district defended by claiming that the board's award of the money was unconstitutional. We found that the school district

was attempting to collaterally attack the decision of the board, and we stated, " 'The rule against collateral impeachment of judicial decisions applies to the determinations of state and county officers or boards of officers, who, although not constituting a court, are called on to act judicially in matters of administration . . . .' " *Id.* at 26, 290 N.W.2d at 809. See, also, *Schilke v. School Dist. No. 107*, 207 Neb. 448, 299 N.W.2d 527 (1980); *Fisher v. Housing Auth. of City of Omaha*, 214 Neb. 499, 334 N.W.2d 636 (1983).

In *State ex rel. Kizzier Chevrolet Co., Inc. v. GMC*, 211 Neb. 626, 319 N.W.2d 735 (1982), an automobile dealership filed an application with the Motor Vehicle Industry Licensing Board requesting that the board order a competing dealership to cease dealing in a particular make of car. After a hearing, the board refused to do so. The complaining dealer had appealed from that order, but the disposition of the appeal was not in the record. The complaining dealer then filed an action in the district court asking that the court restrain a competitor from dealing in that make of car. The district court held for the complaining dealer, but we found that the action in the district court was a collateral attack on the decision of the administrative agency, and we reversed the judgment and ordered that the action be dismissed. We stated, "It is settled law that where an administrative body acting in a quasi-judicial capacity has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack." *Id.* at 630, 319 N.W.2d at 737.

Appellant's first assignment of error is without merit. Because of our disposition of this case, we need not reach the other assignments of error.

AFFIRMED.

GRANT, J., not participating.