IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0931
════════════
 
Saleh W. Igal, Petitioner,
 
v.
 
Brightstar Information Technology 
Group, Inc. and BRBA, Inc., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Eleventh District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 25, 
2006
 
 
 
            
Justice 
Wainwright delivered the 
opinion of the Court as to Parts I, II, III, IVA, IVB2, and V, in which Justice Green, Justice Johnson, Justice 
Willett, and Justice 
McCoy* 
joined, and an opinion as to Part IVB1, in which Justice Green, Justice Johnson, and 
Justice Willett joined.
 
            
Justice Brister 
filed a dissenting opinion, in which Chief Justice Jefferson, Justice 
O’Neill, and Justice 
Medina joined.
 
 
            
In 1989, the Legislature amended the Texas Payday Law to create an 
administrative procedure for a claimant to file a wage claim with the Texas 
Workforce Commission (TWC). In this case, we consider for the first time whether 
TWC’s final adjudication denying recovery of wages 
precludes the subsequent filing of a common law wage claim for the same wages in 
state court. We hold that when a claimant pursues a wage claim to a final 
adjudication before TWC, res judicata bars the claimant from later filing a lawsuit for 
the same damages in a Texas court of law.
I. Factual and Procedural Background
            
In 1989, Saleh Igal 
began working for BRBA, Inc. In April 1998, Igal 
executed an employment agreement with BRBA. Prior to the execution of the 
employment agreement, Brightstar Information 
Technology Group, Inc. acquired BRBA and assumed BRBA’s obligations under the agreement. Igal alleges that Brightstar then 
terminated his employment without cause on January 19, 2000, entitling him to 
post-termination salary. Eighteen months later, on July 17, 2001, Igal filed a wage claim with TWC, asserting a violation of 
his employment agreement and claiming unpaid wages, bonuses, and benefits from 
May 2000 to January 2001. A TWC hearing officer dismissed his claim in a 
preliminary wage determination order. On October 5, 2001, Igal requested a hearing on that determination. On November 
27, 2001, December 27, 2001, and February 14, 2002, a TWC appeals tribunal 
conducted hearings on Igal’s appeal, including legal 
argument and witnesses for both sides. On February 19, 2002, TWC issued its 
decision, concluding that Igal’s claim failed on the 
merits and that TWC lacked jurisdiction because Igal 
filed his claim more than 180 days after his wages became due for payment. TWC 
notified the parties that the decision would become final fourteen days after 
its issuance unless one of the parties filed a motion for rehearing or sought 
judicial review of its decision.
            
In lieu of filing a motion for rehearing with TWC or seeking judicial 
review of TWC’s decision, Igal sued Brightstar and BRBA in a 
Texas district 
court for breach of contract and declaratory judgment. Brightstar and BRBA moved for summary judgment, arguing that 
TWC’s final decision barred Igal’s claims through res judicata, or alternatively, that Igal failed to exhaust his administrative remedies. The 
trial court granted the motion for summary judgment, holding that res judicata barred Igal’s claims. The court of appeals affirmed the trial 
court, holding that TWC had jurisdiction over Igal’s 
claims because the 180-day filing limitations period was not jurisdictional and 
that res judicata barred 
Igal’s breach of contract claims. 140 S.W.3d 820. We affirm the court of appeals and hold that 
the filing limitations period of Section 61.051, while mandatory, is not 
jurisdictional and that res judicata attaches to TWC’s final 
administrative decision.
II. Payday Law
            
In 1915, the Legislature enacted the first Texas Payday Law, requiring 
certain types of employers to promptly and regularly pay employees the full 
amount of wages due.[1] At present, it requires private 
employers[2] of all types and sizes to pay wages owed 
to employees[3] in full, on time, and on regularly 
scheduled paydays. Tex. Lab. Code § 61.011. Originally, 
employees pursued unpaid wage claims in court, if at all. In 1989, the 
Legislature authorized the Texas Employment Commission (now part of TWC) to 
receive and adjudicate complaints for failure to pay wages owed. Act of May 31, 1989, 71st Leg., R.S., ch. 
1039, § 3.01, 1989 Tex. Gen. Laws 4172, 4213−16 (current version at Tex. Lab. Code §§ 
61.051−.067). This amendment gives employees the option of 
filing in court or with TWC to recover unpaid wages. Tex. Lab. Code 
§ 61.051(a) (“An employee who is not paid wages as prescribed by this chapter 
may file a wage claim with the commission.”) (emphasis added). Although there are no statutory limitations 
on the amount a wage claimant may pursue at TWC, typically the claims are too 
small to justify a lawsuit.[4] According to TWC, it receives 
approximately 20,000 wage claims per year for initial decision, and about 18% of 
those claims are appealed to TWC’s appeals tribunal 
yearly.
            
TWC’s procedures are designed to resolve claims 
expeditiously and inexpensively, and it uses abbreviated mechanisms of an 
adversarial judicial process to adjudicate wage claims. For example, TWC’s rules provide for issuance and enforcement of 
subpoenas for witnesses and documents, representation by counsel, and issuance 
of decisions of TWC’s appeals tribunals in writing. 
See 40 Tex. Admin. Code §§ 815.18, 821.45(c). The 
Legislature has granted TWC broad authority to enforce its decisions. See 
Tex. Lab. 
Code §§ 61.019 (making the 
failure to pay wages a felony), 61.020 (authorizing the attorney general to seek 
injunctive relief against repeat offenders), 61.081 (making a final TWC order an 
administrative lien on all of an employer’s property), 61.091 (granting TWC the 
authority to levy the employer’s bank account). Aggrieved 
parties may appeal the initial Commission preliminary wage determination order 
to a TWC appeals tribunal, and, after exhausting administrative remedies, appeal 
the Commission’s final order to a court of competent jurisdiction. Id. § 
61.062(a).
III. Jurisdiction
            
Res judicata does not 
apply when the initial tribunal lacks subject matter jurisdiction over the 
claim. See Citizens Ins. Co. of Am. v. Daccach, 
217 S.W.3d 430, 452−53 (Tex. 2007). Consequently, we must first 
address whether TWC had subject matter jurisdiction over Igal’s claim.
            
Igal argues that TWC dismissed his claim 
because it had no jurisdiction pursuant to section 61.051 of the Texas Labor 
Code. He maintains that the court of appeals erred by expanding TWC’s jurisdiction beyond the Legislature’s intention, as 
expressed in Section 61.051. Igal argues that because 
TWC lacked subject matter jurisdiction, TWC’s decision 
could not preclude his subsequent lawsuit.
            
The Legislature establishes the jurisdiction of administrative agencies. 
Igal claims Subsection 61.051(c) limits TWC’s jurisdiction. Subsection 61.051(c) of the Texas Labor 
Code states that “[a] wage claim must be filed not later than the 180th day 
after the date the wages claimed became due for payment.” Igal performed his last services for BRBA on January 19, 
2000. Two days later, Brightstar informed him that his 
work group had been discontinued, leaving him without a position at the company. 
Igal was paid through April 2000 but claimed that 
because Brightstar terminated him without cause, he 
was entitled to compensation under his contract through January 19, 2001. He 
filed his wage claim with TWC on July 17, 2001, seeking wages from May 2000 
through January 19, 2001. In its decision, TWC stated:
 
The 
Commissions’ jurisdiction extends back only 180 days from the filing of the wage 
claim. Any pay owed to the claimant would have been due well before the 
beginning of the Commission’s jurisdiction in this case. Therefore, the wage 
claim was not timely filed and is dismissed.
 
 
Before this 
Court, Igal argues that he took TWC at its word that 
it did not have jurisdiction and therefore filed his wage claim in district 
court. He contends that the court of appeals expanded TWC’s jurisdiction beyond the 180 days the Legislature 
intended.
            
In support of his argument that the 180-day filing limitations period is 
a jurisdictional threshold, Igal cites Texas 
Employment Commission v. Ortiz. 574 S.W.2d 213, 215 (Tex. 
Civ. App.—Corpus Christi 1978, no writ). In 
Ortiz, the court of appeals held that the twelve-day limit for the 
internal appeals to the administrative appeals tribunal of the Commission was 
jurisdictional. Id. However, the court in Ortiz 
did not interpret the statute at issue here.
            
This Court has not directly addressed whether the filing limitations 
period in Subsection 61.051(c) is a jurisdictional threshold. In Mingus v. Wadley, we held that a party suing 
on a statutory cause of action must comply with all administrative 
prerequisites, as a matter of jurisdiction. 285 S.W. 1084, 
1087 (Tex. 1926), overruled in part by Dubai 
Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex. 2000). “The 
general rule is that where the cause of action and remedy for its enforcement 
are derived not from the common law but from the statute, the statutory 
provisions are mandatory and exclusive, and must be complied with in all 
respects or the action is not maintainable.” Mingus, 285 S.W. at 1087. In Dubai Petroleum 
Co., we overruled Mingus “to the 
extent that it characterized the plaintiff’s failure to establish a statutory 
prerequisite as jurisdictional.” 12 S.W.3d at 76. Igal urges the Court to apply Mingus, not Dubai, and hold that a plaintiff’s 
failure to meet a statutory prerequisite for a wage claim is jurisdictional. 
However, in Dubai, we discussed the evolution of 
this area of the law, noting that “[a]lthough Mingus represented the dominant approach when 
it was decided, ‘the modern direction of policy is to reduce the vulnerability 
of final judgments to attack on the ground that the tribunal lacked subject 
matter jurisdiction.’” Id. (quoting Restatement (Second) of Judgments § 11 
cmt. e (1982)).[5] 
            
Even before Dubai, we explained that “just because a 
statutory requirement is mandatory does not mean that compliance with it is 
jurisdictional.” Albertson’s, Inc. v. Sinclair, 984 
S.W.2d 958, 961 (Tex. 1999). Later, in University of 
Texas Southwestern Medical Center v. Loutzenhiser, 
we elaborated on this distinction, looking to legislative intent to determine 
whether a requirement is jurisdictional or merely mandatory:
 
The 
failure of a non-jurisdictional requirement mandated by statute may result in 
the loss of a claim, but that failure must be timely asserted and compliance can 
be waived. The failure of a jurisdictional requirement deprives the court of the 
power to act (other than to determine that it has no jurisdiction), and ever to 
have acted, as a matter of law. Since the Legislature is bound to know the 
consequences of making a requirement jurisdictional, one must ask, in trying to 
determine legislative intent, whether the Legislature intended those 
consequences.
 
 
140 S.W.3d 351, 359 (Tex. 2004), superseded by statute, 
Tex. Gov’t Code § 311.034. Although the 
Legislature subsequently provided that the notice requirement at issue in Loutzenhiser was jurisdictional,[6] the Court’s reasoning remains valid. 
Whether a filing requirement is jurisdictional is a question of statutory 
interpretation. Hence, we review the words of the statute.
            
Section 61.051, entitled “Filing Wage Claim,” provides the conditions 
under which a claimant is eligible for relief. Neither the language of the 
provision nor the statutory scheme indicates Section 61.051 was intended to 
address TWC’s jurisdiction. See 
Thomas v. Long, 207 S.W.3d 334, 340 (Tex. 2006) (analyzing both express language 
and the statutory scheme to determine jurisdiction). It establishes a 
procedural bar similar to a statute of limitations and does not prescribe the 
boundaries of jurisdiction.[7] The Legislature’s bill analysis supports 
this reading of Section 61.051. It explains that the provision “[e]stablishes a process by which an employee may file a 
wage claim with the commission, which can investigate the claim and, if 
necessary and appropriate, hold an administrative hearing and issue 
administrative penalties” and “[s]tructures the 
process and sets specific time lines for the involved parties to act.” 
House Comm. on Gov’t Org., Bill Analysis, Tex. H.B. 863, at 11, 71st Leg., R.S. 
(1989) (emphasis added). Section 61.051 outlines the filing process for a Payday 
Law claim and does not speak to TWC’s 
jurisdiction.
            
The United States Supreme Court has also held that filing limitations 
periods for administrative complaints are not jurisdictional. In Zipes v. Trans World Airlines, Inc., the Court 
held that the filing limitations period of an EEOC discrimination claim operated 
like a statute of limitations rather than as a jurisdictional prerequisite. 
455 U.S. 385, 393 (1982). Title 
VII of the Civil Rights Act of 1964 requires that anyone wishing to challenge an 
employment practice must first file with the Equal Employment Opportunity 
Commission (EEOC), within a specified period of time. 42 
U.S.C. § 2000e-5(e). The Supreme Court held that filing a timely charge 
of discrimination with the EEOC is not a jurisdictional prerequisite, but rather 
a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. Zipes, 455 U.S. at 393. The relevant statute in 
that case “contains no reference to the timely-filing requirement. The provision 
specifying the time for filing charges with the EEOC appears as an entirely 
separate provision, and it does not speak in 
jurisdictional terms or refer in any way to the jurisdiction of the district 
courts.” Id. 
at 393−94. The Court explained that the provision granting federal 
district courts jurisdiction over Title VII claims does not limit jurisdiction 
to those cases in which there has been a timely EEOC filing. Id. at 
393. Thus, the United States Supreme Court held that even with their 
limited subject matter jurisdiction, federal courts maintain jurisdiction over 
Title VII claims, even in the event of an untimely EEOC filing. Id. Similarly, the 
180-day filing limitations period in this case is a filing requirement.
            
Following Zipes, the United 
States Supreme Court continued to distinguish between statements of jurisdiction 
and mere filing requirements. In Kontrick v. 
Ryan, the Supreme Court observed that there is “a critical difference 
between a rule governing subject matter jurisdiction and an inflexible 
claim-processing rule.” 540 U.S. 443, 456 
(2004). In Arbaugh v. Y & H 
Corp., the Supreme Court held that the numerosity 
requirement of fifteen or more employees in a Title VII action was not 
jurisdictional, but rather an element of the cause of action that could not be 
asserted defensively after the verdict. 546 
U.S. 500, 516 (2006).
            
The dissent argues that because the order of TWC’s wage claim appeals tribunal used the term “dismissed,” 
TWC held that it did not have jurisdiction over Igal’s 
claim. Section 61.052 authorizes a TWC hearings officer to make one of two 
determinations when making a preliminary wage determination: dismiss the claim 
or order payment of wages. Tex. Lab. Code § 61.052(a) (“[T]he commission shall analyze 
each wage claim filed under Section 61.051 and, if the claim alleges facts 
actionable under this chapter, shall investigate the claim and issue a 
preliminary wage determination order: (1) dismissing the wage claim; or (2) 
ordering payment of wages determined to be due and unpaid.”). Under the statute, 
TWC dismisses claims that are unsuccessful, whether based on jurisdiction or the 
merits. There is no basis in the statutory language for the dissent’s conclusion 
that TWC’s “dismissal” of Igal’s claim necessarily signals only a non-merits 
ruling.
            
The order of TWC’s hearings officer “becomes 
final 14 days after the date the order is mailed,” unless it is timely appealed 
to the TWC appeals tribunal. Id. § 61.0614. Igal appealed to the 
appeals tribunal. The TWC wage claim appeals tribunal may modify, affirm, or 
rescind the preliminary wage determination order. Id. § 
61.059. The appeals tribunal’s dismissal of Igal’s wage claim became final when Igal failed to file an appeal or motion for rehearing. 
Id. § 
61.0614. TWC’s order states that its dismissal 
of the claim was on two grounds: Igal’s claim failed 
on the facts and the law, and Igal’s complaint was not 
timely filed. Although a dismissal in the courts often means the court held that 
it did not have subject matter jurisdiction over the dispute, TWC’s procedures are not governed by the procedures for 
courts of law. It has its own procedures, and TWC is not bound in its 
administrative processes to use judicial terminology.
            
We interpret the words of the Legislature to have created the 180-day 
filing limitations period as a mandatory condition to pursuing the 
administrative cause of action and not as a bar to TWC’s exercise of jurisdiction. TWC’s use of the word “dismissed” in its order does not 
alter its jurisdiction. TWC had jurisdiction over Igal’s claim. We turn to consider whether res judicata should attach to its 
final decision.    
IV. Res Judicata
A. Preclusive Effect of TWC Orders
            
Igal maintains that res judicata cannot apply to his 
suit in a court of law because the Legislature intended Section 61 to provide an 
alternate, and not an exclusive, remedy. He also argues that because he is not 
required to appeal void judgments issued by an agency without jurisdiction, his 
unsuccessful prosecution of an administrative claim should not bar him from 
bringing a common law claim for the same transaction in state court. Brightstar responds that the court of appeals correctly 
applied res judicata because 
TWC had jurisdiction over the claim and rendered a final decision on the 
merits.
            
Certainly in courts of law, a claimant generally cannot pursue one remedy 
to an unfavorable conclusion and then pursue the same remedy in another 
proceeding before the same or a different tribunal. Res judicata bars the relitigation of claims that have been finally adjudicated or 
that could have been litigated in the prior action. See Barr v. Resolution 
Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). For res judicata to apply, the 
following elements must be present: (1) a prior final judgment on the merits by 
a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same 
claims as were raised or could have been raised in the first action. Daccach, 217 S.W.3d at 449. 
Thus, a party may not pursue a claim determined by the final judgment of a court 
of competent jurisdiction in a prior suit as a ground of recovery in a later 
suit against the same parties. Tex. Water Rights 
Comm’n v. Crow Iron Works, 582 S.W.2d 768, 771–72 
(Tex. 
1979). In short, res judicata precludes parties from relitigating claims that have been finally adjudicated by a 
competent tribunal. See Barr, 837 S.W.2d at 
628.
            
We have not previously decided if res judicata applies to a final TWC decision. We have, however, 
held that to further the public policy discouraging prolonged and piecemeal 
litigation, the administrative orders of certain administrative agencies bar the 
same claims being relitigated in the court system. 
Westheimer ISD v. Brockette, 567 S.W.2d 780, 787, 789 (Tex. 1978) (applying the 
doctrine of res judicata to 
a ruling of the Texas Commissioner of Education); see also Coalition 
of Cities for Affordable Util. Rates v. Pub. Util. Comm’n, 798 S.W.2d 560, 563, 565 (Tex. 1990) (applying 
res judicata to a Public 
Utilities Commission ruling). Similarly, the United States Supreme Court has 
held that when an administrative agency is acting in a judicial capacity, res judicata bars subsequent 
litigation following the agency’s decision. United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 
(1966), superseded by statute, Contract Disputes Act of 1978, 41 U.S.C. 
§§ 601– 613. “When an administrative agency is acting in a judicial capacity and 
resolve[s] disputed issues of fact properly before it which the parties have had 
an adequate opportunity to litigate, the courts have not hesitated to apply 
res judicata to enforce 
repose.” Id. The Supreme Court later reaffirmed 
the “long favored application of the common-law doctrines of collateral estoppel (as to issues) and res 
judicata (as to claims) to those determinations of 
administrative bodies that have attained finality.” Astoria 
Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 107 
(1991). Many states have adopted the Supreme Court’s 
three-pronged approach.[8]
            
In addition to the federal courts and courts of other states, Texas courts of appeals 
have cited Utah Construction & Mining’s three-part test in 
holding that res judicata 
bars relitigation of claims previously finally 
determined by an administrative agency. See, e.g., Tricon Tool & Supply, Inc. v. Thumann, 226 S.W.3d 494, 511 (Tex. App.—Houston [1st Dist.] 2006, 
pet. denied); Ex parte Serna, 957 S.W.2d 598, 
601 (Tex. App.—Fort Worth 1997, no pet.). The Court of Criminal Appeals has also 
used this approach in assessing the effect of administrative decisions on future 
court proceedings. See State v. Aguilar, 947 S.W.2d 257, 259 (Tex. Crim. App. 1997) (citing Ex parte Tarver, 725 S.W.2d 195, 199 (Tex. Crim. App. 1986)). In deciding wage claims under Section 61, 
TWC acts in a judicial capacity. The parties had an adequate opportunity to 
litigate their claims through an adversarial process in which TWC finally 
decided disputed issues of fact. Res judicata, therefore, will generally apply to final TWC 
orders.
            
The fact that the Payday Law provides an alternative remedial scheme to 
the common law does not prevent res judicata from applying to TWC orders. Both courts and 
administrative agencies may provide remedies for injuries actionable under the 
common law. The Legislature intended the Payday Law to provide employees with a 
vehicle for relief when a traditional lawsuit proved too arduous. See Holmans v. Transource Polymers, Inc., 914 S.W.2d 189, 192 (Tex. 
App.—Fort Worth 1995, writ denied). Typically, a statutory remedy is 
cumulative of the common law remedy, unless the statute denies the right to the 
common law remedy. Id. We agree with the court of 
appeals in this case that “[t]he Payday Act is not an employee’s sole and 
exclusive remedy for a claim based on past wages but is rather an alternative 
remedy that is cumulative of the common law.” 140 S.W.3d at 
823. Payday Law actions do not abrogate common law claims against 
employers for an alleged failure to pay compensation. Rather, TWC offers an 
alternate means to the same remedy.
            
Igal argues that under our holding in Cash 
America International, Inc. v. Bennett, res judicata does not preclude claimants from relitigating TWC claims in state court. 35 
S.W.3d 12, 16 (Tex. 2000). The holding in 
Bennett was based on the Texas Pawnshop Act’s provision of alternate, 
concurrent remedies to certain common law claims. Id. at 
14. We explained that “[t]he Legislature expressly left pledgors free to ‘seek a remedy in court’ if they are 
dissatisfied with the Commissioner’s determination or if the Commissioner does 
not make a timely determination.” Id. at 17 (citing Act of May 27, 1999, 76th Leg., R.S., ch. 1399, § 7, 1999 Tex. Gen. Laws 4724, 4726 (now codified 
at Tex. Fin. Code § 371.167(a))). Importantly, in that 
case, the Legislature had amended the relevant section of code to read “if the 
pledgor does not accept the commissioner’s 
determination, the pledgor may seek a remedy in 
court.” Tex. Fin. Code 
§ 371.167(a). Although 
this amendment was not applicable to the case, the Court found it instructive in 
assessing the Legislature’s intent. The Labor Code does not provide Igal with any such recourse.
            
Igal also argues that the court of appeals 
erred in its reliance on Holmans for the 
holding that res judicata 
applies to Igal’s claim. 914 S.W.2d 
at 189. In that case, the claimant filed a common law debt action to 
recover unpaid sales commissions and expenses. Id. at 190. He then filed an administrative wage claim with the 
Texas Employment Commission (TEC).[9] Id. The preliminary wage 
determination indicated that the employer owed the claimant over $25,000 in 
unpaid commissions. Id. However, prior to the final 
determination, the claimant withdrew his administrative claim to pursue common 
law relief. Id. The employer moved to 
dismiss the common law claim for failure to exhaust administrative remedies. 
Id. 
The court of appeals reversed, holding that the claimant could pursue his 
common law claim because he withdrew his wage claim before the agency made a 
decision. Id. at 
194. The court reasoned that
 
[s]hould a claimant choose to file a claim under the [Payday 
Law], utilize its remedial scheme, and appeal the final administrative order, 
then the claimant is properly required to abide by the statute’s provisions. We 
do not, however, construe the Payday Law as preempting a claimant, such as 
appellant, from choosing to pursue his claim as a common-law action in the 
courts of this state.
 
 
Id. 
at 193. Accordingly, once a claimant who has alternate proceedings at 
his disposal to obtain relief available under the Payday Law pursues an 
administrative claim to a final decision, he forgoes his common law claims. To 
pursue a common law remedy for the same wages as sought in his payday claim, a 
claimant must withdraw his administrative claim before the agency issues a final 
decision. See id.; see also Tricon Tool & Supply, Inc., 226 
S.W.3d at 511 (claimant barred by res judicata when he failed to withdraw his administrative claim 
before agency decision became final). Because Igal did 
not withdraw his administrative claim prior to TWC’s 
final determination, res judicata will bar his claim if TWC’s order is considered final for the purposes of res judicata.
B. Preclusive Effect of TWC’s Igal Order
1. Adjudication of Disputed Facts
            
TWC’s written order plainly resolved disputed 
facts and determined that Igal’s claim for unpaid 
wages was without merit. The dissent contends that because TWC argues in this 
Court that it dismissed the claim on procedural grounds, we cannot hold that the 
decision was anything more than a procedural dismissal for untimeliness. There are at least two answers to that 
argument. First, the dissent shortchanges TWC’s 
argument. TWC asserts that it lacked subject matter jurisdiction over Igal’s late-filed claim. We have already held to the 
contrary, and the dissent agrees that TWC is wrong on this point. Second, TWC 
adjudicated more than just the timeliness issue in its Payday Law decision. In 
the order of its appeal tribune, TWC made findings of fact:
 
Although 
the claimant did not receive a document from either entity which states “your 
agreement is not being renewed”, the claimant was notified in writing that his 
group was being dissolved and he was no longer performing services for the named 
businesses. The Commission considers this sufficient notice that the agreement 
was not being renewed. The claimant was paid through the end of the last 
contract period, April, 1999-April, 2000.
            

Since the 
claimant remained on the payroll with the named businesses through the end of 
the contract period, he is considered “employed” by the named businesses through 
the end of the contract period. The agreement expired. The claimant’s employment 
ended when the contract ended. He was not “terminated without cause” as provided 
in the agreement and, therefore, is not entitled to the various payments which 
may have become due under the agreement if his employment had been terminated 
without cause.  
 
Consequently, there is no 
extension of compensation owed to the claimant beyond the expiration of the 
agreement in April 2000. The Commissions’ jurisdiction extends back only 180 
days from the filing of the wage claim. Any pay owed to the claimant would have 
been due well before the beginning of the Commission’s jurisdiction in this 
case. Therefore, the wage claim was not timely filed and is dismissed.
 
 
TWC decided 
the key questions of fact in dispute in Igal’s payday 
claim: when Igal’s employment contract expired, that 
he had sufficient notice that the contract was not being renewed, that he was 
not terminated without cause, and that he was not entitled to any additional 
compensation. The dissent correctly concludes that “the Commission had to decide 
whether he was terminated for cause or nonrenewal” as 
a prerequisite to deciding whether Igal’s claim was 
timely. __ S.W. 3d. __, __. Yet the dissent maintains 
that these necessary findings of fact did not go to the merits of Igal’s claim. Id. Regardless of their purpose, 
however, these findings were determinations made by a competent tribunal vested 
with judicial authority to make those decisions after an adequate opportunity to 
air the issue. As the Court decides that the filing limitations period was not a 
jurisdictional prerequisite, TWC’s order that Igal was not entitled to additional compensation could stand 
on its own feet as a final judgment. The suggestion that findings of fact that 
were necessary to a final judgment should not be accorded res judicata effect would be quite 
a departure from established jurisprudence. Claim preclusion is accorded to all 
claims that have been finally adjudicated or that could have been finally 
adjudicated in the prior litigation that arise from the same transaction. 
Barr, 837 S.W.2d at 628.
            
Moreover, the dissent’s assertion that TWC’s 
merits determination was “an advisory opinion” misconstrues the term, as even 
the dissent concedes that it was necessary for TWC to answer the merits question 
as a condition to concluding the claim was untimely.
2. Limitations Ruling
            
Even if we interpreted TWC’s decision as merely 
a dismissal for failure to meet the 180-day filing limitations period, we reach 
the same conclusion. The filing limitations period acts as a statute of 
limitation for Payday Law claims. A court’s dismissal of a claim because of a 
failure to file within the statute of limitations is accorded preclusive effect. 
See Fite v. King, 718 S.W.2d 345, 347 (Tex. 
App.—Dallas 1986, writ ref’d n.r.e.); see also Besing v. 
Vanden Eykel, 878 S.W.2d 
182, 185 (Tex. App.—Dallas 1994, writ denied) (stating that granting summary 
judgment on limitations operates as res judicata to a subsequent writ between the same parties on 
the same cause of action). The Fifth Circuit has enunciated unequivocally that 
res judicata “shall be given 
to a judgment dismissing a cause of action on limitations grounds.” Steve D. 
Thompson Trucking, Inc. v. Dorsey Trailers, Inc., 870 F.2d 1044, 1046 (5th 
Cir. 1989) (citing Nilsen v. City of Moss 
Point, 674 F.2d 379, 382 (5th Cir. 1982), aff'd on rehearing, 701 F.2d 556 (5th 
Cir.1983) (en banc)). Many other federal courts of appeals have also recognized 
that a final judgment on statute of limitations grounds precludes further 
litigation of the same dispute. See, e.g., Murphy v. Klein 
Tools, Inc., 935 F.2d 1127, 1128–29 (10th Cir. 1991); Kale v. Combined 
Ins. Co. of Am., 924 F.2d 1161, 1163, 1165 (1st Cir. 1991); Shoup v. Bell & Howell, Co., 872 F.2d 1178, 1180 
(4th Cir. 1989); Rose v. Town of Harwich, 778 F.2d 77, 80 (1st Cir. 1985) 
(applying Massachusetts law and acknowledging a “clear trend toward giving 
claim-preclusive effect to dismissals based on statutes of limitations”); PRC 
Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 (2d Cir. 1983). Failure 
to timely file an administrative wage claim, as mandated by the Legislature, 
bars the claim on limitations grounds. TWC’s dismissal 
of Igal’s claims under Section 61.052(a) is a denial 
of the claim to which res judicata attaches when, as here, the claim is pursued to 
final judgment.
            
The dissent relies on Section 49 of the Restatement (First) of Judgments 
and the Restatement of Conflict of Laws for the proposition that a claimant 
whose action is precluded by limitations in one state court may still be able to pursue the same action in a different state with a 
longer limitations period. __ S.W.3d at __.[10] That analogy, the dissent argues, 
supports letting a Payday claimant who litigates his claim in the Texas 
Commission to a final decision later file the same claim in a Texas court of law. 
Id. 
This argument fails for several reasons.
            
First, Igal does not cite Section 49 or make 
the argument the dissent makes. Second, this Court has not adopted Section 49 of 
the Restatement. Third, Section 49 does not support the proposition that a 
Payday claimant can pursue his claim twice in this case. Comment (a) to Section 
49 addresses the potential to file a claim in two different states with 
different statutes of limitations:
 
 
class=Section3> 
[I]f the 
plaintiff brings an action to enforce a claim in one State and the defendant 
sets up the defense that the action is barred by the Statute of Limitations in 
that State, the plaintiff is precluded from thereafter maintaining an action to 
enforce the claim in that State. He is not, however, precluded from maintaining 
an action to enforce the claim in another State if it is not barred by 
the Statute of Limitations in that State.
 
 
 
class=Section4> 
Restatement (First) of 
Judgments § 49 cmt. a (1942) (emphasis added). Igal’s 
claim is being pursued in one state, not in two states with separate 
legislatures that have mandated different public policies on limitations. See 
Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc., 880 F.2d 818, 819 
(5th Cir. 1989) (denial of rehearing) (concluding that Section 49 applies to 
“duplicative actions in state courts in different states”). As this Court has 
explained, the Texas Legislature’s creation of the Payday administrative scheme 
and the attendant filing limitations period logically effectuates its efficiency 
goals, which are not inconsistent with the existence of an alternate common law 
contract claim. The Legislature set up a more rapid administrative route that a 
claimant may select, or a claimant may pursue the judicial route; both have 
benefits and detriments depending on the timing of the filing, the size of the 
claim, the cost of pursuing recovery, and other factors. In this case, we are 
not faced with contrary policies in separate jurisdictions which Section 49 
presumes for its limitations argument. The Fifth Circuit Court of Appeals case 
on which the dissent relies for its Section 49 argument is distinguishable as it 
presents competing limitations policies in different states that are not at 
issue here. See Henson v. Columbus Bank & Trust Co., 651 F.2d 
320, 325 (5th Cir. 1981) (a plaintiff’s failure to defeat a statute of 
limitations defense in one state does not necessarily preclude the action in 
another jurisdiction). The Fifth Circuit later distinguished Section 49 and 
squarely held, in cases like this one, that a dismissal on limitations grounds 
operates to bar subsequent litigation of the same dispute in the same 
jurisdiction. See Ellis v. Amex Life Ins. Co., 211 F.3d 935, 937 (5th 
Cir. 2000) (dismissal of a suit on limitations grounds bars second suit 
under principles of res judicata); Thompson Trucking, 880 F.2d at 819 
(distinguishing Henson); see also Mathis v. Laird, 457 F.2d 
926, 927 (5th Cir. 1972) (holding that a ruling based on a statute of 
limitations was a decision on the merits for res judicata purposes).[11]
            
Fourth, claimants are entitled to a fair and reasonable procedure to 
recover unpaid wages. We do not conclude, however, that because the Legislature 
created an administrative route to recovery as an alternative to a lawsuit, that 
claimants necessarily will have two bites at the apple. They are entitled to a 
fair bite, but not two bites. A common law breach of contract claim for damages 
has long existed. The 1989 amendments to the Labor Code that created an 
administrative route for employees to obtain unpaid wages advised employees that 
they “may,” not must, file a wage claim with TWC. Employees were then given a 
choice between an administrative process designed to adjudicate quickly 
relatively small claims or to have their day in court and the longer and more 
involved process of the judicial system. See Tricon Tool & Supply, Inc., 226 S.W.3d at 
511. The Legislature could have created two consecutive procedures (an 
administrative proceeding followed by a new judicial proceeding for the dissatisfied party) for adjudicating these claims, but there 
is no indication that it did. In Texas parlance, the claimant selects which 
horse to ride. Once the horse crosses the finish line, a claimant cannot switch 
horses and run the same race again, hoping for a different outcome.
            
Fifth, the dissent’s position would also make TWC determinations based on 
limitations entirely duplicative, as any party aggrieved by a final 
administrative decision on limitations would get another chance in a lawsuit 
over the same claim in a court of law. See Tex. Lab. Code § 
61.062. Morever, this position 
could pit one court’s ruling against another. An unsuccessful party who timely 
appealed the final TWC limitations ruling to a trial court of competent 
jurisdiction could also obtain review in Texas appellate courts thereafter. If the 
party ultimately lost the judicial appeal of TWC’s 
administrative decision, including through judicial appeals and petition to this 
Court, the dissent would allow the party to file a new common law claim in a 
court that could reach a different result. There is simply no indication that 
the Legislature intended Payday Law claims to receive judicial review in two 
separate court proceedings. We decline to impose such substantial inefficiency 
on the Legislature’s Payday scheme.
            
Finally, we do not equate the optional filing of an administrative claim 
as equivalent to filing a common law claim in a separate jurisdiction’s court of 
law, such that Section 49’s two-state approach might apply. Unlike with common 
law claims, the Legislature can prescribe with relatively few limitations the 
parameters, damages, and procedures for pursuing an administrative right it 
creates. See Tex. Natural Res. Conservation Comm’n 
v. Lakeshore Util. Co., 164 S.W.3d 368, 377 (Tex. 2005) (“We begin with the 
well-established principle that as an administrative agency, the Commission may 
exercise only those powers that the Legislature confers upon it in clear and 
express language, and cannot erect and exercise what really amounts to a new or 
additional power for the purpose of administrative expediency.”) (citing Pub. Util. Comm’n v. City Pub. Serv. Bd. of San 
Antonio, 53 S.W.3d 310, 316 
(Tex. 
2001)). The Legislature created an alternate administrative 
remedy and included a right to appeal the final administrative determination to 
a court of law. Igal availed himself of the 
administrative avenue and declined to exercise his right to appeal.
            
TWC was acting in a judicial capacity when it decided that Igal’s failure to timely file defeated his claims. When 
TWC’s decision became final, Igal was bound by that decision. Res judicata, therefore, barred 
Igal’s suit in district court.
V. Conclusion
            
Igal had the option of seeking relief for 
alleged unpaid wages in an administrative proceeding under the Payday Day Law or 
pursuing a common law debt action in state court. He chose the former. Only 
after TWC entered a final judgment on the merits, which Igal elected not to appeal, did Igal seek redress in the courts. We hold that the doctrine 
of res judicata bars Igal from pursuing relief in a court of law after obtaining 
a final decision in TWC for the same transaction. We therefore affirm the 
judgment of the court of appeals.
 
            
            
            
            
            
________________________________________
            
            
            
            
            
            
J. Dale Wainwright
            
            
            
            
            
            
Justice
 
OPINION DELIVERED: DECEMBER 7, 
2007





* 
The Honorable Bob McCoy, Justice, Second District Court of Appeals, sitting by 
commission of the Honorable Rick Perry, Governor of Texas, pursuant to section 
22.005 of the Texas Government Code. Justice Hecht is recused.
 

[1] 
Act of March 1, 1915, 34th Leg., R.S., ch. 25, 1915 
Tex. Gen. Laws 
43 (amended 1933, 1957, 1983, 1985, 1989, 1991). This act was codified into the 
Texas Labor Code in 1993 and subsequently amended. Act of May 
12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. 
Laws 987, 1010) (amended 1995, 1997, 2003, 2005) (current version at Tex. Lab. Code §§ 
61.001–.095).

[2] 
By its terms, the Payday Law does not apply to the federal or Texas government, or 
political subdivisions of this state. Tex. Lab. Code § 
61.003.

[3] 
Independent contractors are not protected by the Payday Law. Tex. Lab. Code 
§ 61.001(3)(B).

[4] 
A 2003 study of 119 claims found that the median wage claim was $420.00. Julien Ross, A Fair Day’s Pay: The Problem of Unpaid Workers in Central Texas, 10 
Tex. Hisp. J. 
L. & Pol’y 117, 128 (2004).

[5] 
Although in the past we have described a statutory time limitation in the 
Commission on Human Rights Act as “mandatory and jurisdictional,” those cases 
predate Dubai and dealt with a different 
statutory scheme than presented here. See Johnson & 
Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 929 (Tex. 1996); Specialty Retailers v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996); Shroeder 
v. Tex. Iron Works, 813 S.W.2d 483, 486 
(Tex. 
1991).

[6] 
The Legislature amended Section 311.034 in 2005, after the filing of this case, 
to provide that “[s]tatutory prerequisites to a suit, 
including the provision of notice, are jurisdictional requirements in all suits 
against a government entity.” The superseding statute addresses waivers of 
sovereign immunity in suits against government entities, which is not at issue 
here.

[7] 
Subsection (c) creates the 180-day filing limitation period. Tex. Lab. Code § 61.051(c). The remaining subsections 
deal with other procedural, not jurisdictional issues: Subsection (b) states 
that “[a] wage claim must be in writing on a form prescribed by the commission 
and must be verified by the employee,” and Subsection (d) allows the employee to 
file his claim in person or by mail.

[8] 
The highest courts in many states have relied on the United States Supreme Court 
decision in Utah Construction & Mining to evaluate the preclusive 
effects of administrative agency decisions. See, e.g., Luedtke v. Nabors Alaska 
Drilling, 768 P.2d 1123, 1131 n.5 (Alaska 1989); Brosterhous v. State Bar, 906 P.2d 1242, 1254 
(Cal. 1995); State v. Dukelow, No. 24233, 2003 
WL 21481142, at *1 (Haw. Jun. 27, 2003); Bennett v. MC No. 619, Inc., 586 
N.W.2d 512, 517–18 (Iowa 1998); Gulf States Utils. Co. v. La. Pub. Serv. Comm’n, 633 So. 2d 1258, 
1267 (La. 1994) (Dennis, J., concurring); Stowe v. Bologna, 610 N.E.2d 
961, 963 (Mass. 1993); Nasi v. State Dep't 
of Highways, 753 P.2d 327, 329 (Mont. 1988); Scott v. Mattingly, 
488 N.W.2d 349, 352 (Neb. 1992); City of Hackensack v. Winner, 410 
A.2d 1146, 1161 (N.J. 1980); Ryan v. N.Y. Tel. Co., 467 N.E.2d 487, 499 
(N.Y. 1984); Cridland v. N.D. Workers Comp. 
Bureau, 571 N.W.2d 351, 355 (N.D. 1997); Superior’s Brand Meats, Inc. v. 
Lindley, 403 N.E.2d 996, 999 (Ohio 1980); Lee v. R.I. Council 94, 796 
A.2d 1080, 1089 (R.I. 2002); Carman v. S.C. Alcoholic Beverage Control Comm’n, 451 S.E.2d 383, 386 (S.C. 1994); Schmidt v. 
Zellmer, 298 N.W.2d 178, 180 (S.D. 1980); Salt 
Lake Citizens Congress v. Mountain States Tel. & Tel. Co., 846 P.2d 
1245, 1251 n.4 (Utah 1992); Sheehan v. Dep’t of Empl. & Training, 733 A.2d 88, 91 (Vt. 1989); In re Personal Restraint of Gronquist, 978 P.2d 1083, 
1090 (Wash. 1999); Liller v. W. Va. Human Rights Comm’n, 376 S.E.2d 639, 646 
(W. Va. 1988); Lindas v. Cady, 515 N.W.2d 
458, 466 (Wis. 1994); Slavens v. Bd. of CountyComm’rs, 
854 P.2d 683, 685 (Wyo. 1993). The Minnesota 
Supreme Court has also applied res judicata to administrative agency decisions, independent of 
Utah Construction & Mining. See McKee v. County of Ramsey, 245 N.W.2d 460 
(Minn. 
1976).

[9] The TEC dealt with Section 61 wage claims, 
like Igal’s, until 1995. In 1995, the Legislature 
enacted House Bill 1863, merging twenty-eight workforce services, including TEC, 
into TWC. Act of May 26, 1995, 74th Leg., R.S., ch. 
655, art. 11, 1995 Tex. Gen. Laws 3543, 3580 (current version 
at Tex. Lab. Code §§ 
301.001–.171).

[10] In section 19 of the subsequent Restatement 
(Second) of Judgments, the treatise acknowledges that increasingly judgments not 
passing directly on the merits of a claim are accorded preclusive effect, 
“especially if the plaintiff has failed to avail himself of opportunities to 
pursue his remedies in the first proceeding.” In this case, after TWC issued its 
final adjudication, Igal failed to pursue his 
statutory right to appeal TWC’s decision to a district 
court.

[11] The dissent also cites Miller, Wright, and 
Cooper’s Federal Practice and Procedure for the proposition that a second forum 
may allow a suit barred by limitation in the first forum to proceed. 18A Charles Alan Wright, Arthur R. Miller & 
Edward H. Cooper, Federal Practice and Procedure § 4441 (2d ed. 2002). 
Section 4441 does not consider the preclusive effect of a state administrative 
agency order on a claim filed in a court in the same 
state.